We are unable to agree with the appellant that this testimony was of such importance or materiality as to prejudice his rights.

What we hold is that under this record the trial court did not abuse his discretion in overruling appellant's motion for a new trial based upon the error mentioned.

Appellant's motion for rehearing is overruled.

Wynnaline Rasco STINSON et vir, Appellants,

v.

J. T. RASCO et ux., Appellees.

Nos. 15422, 15439.

Court of Civil Appeals of Texas.

Dallas.

Sept. 26, 1958.

Warren Whitham, Dallas, for appellants.

Joe Tunnell, Canton, for appellees.

YOUNG, Justice.

■■ This is a proceeding for adoption of the eight year old daughter of contestant, Wynnaline Rasco Stinson; filed in the District Court of Van Zandt County on August 31, 1957; petitioners being the maternal grandparents of said child, and appellant-contestant in turn the daughter of appellees; Norman Stinson, husband of Wynnaline, joining with his wife in the contest. The Stinsons, living in Dallas County, and notified by letter of the suit, first filed plea of privilege and to the jurisdiction, which pleas were heard and overruled. The petition for adoption then coming on for trial was granted upon hearing and adoption of child effected, with change of name to Jessica Karen Rasco. Appeals were duly taken to both of these rulings of court; the records being submitted concurrently but separately briefed.

Natural father of the child was William Butler from whom contestant was divorced in October 1951 in a Dallas County District Court with custody of Karen awarded to her, she marrying Stinson April 26, 1952. Appellees were living in Dallas County on birth of the child in their home on October 6, 1949, at a time when William Butler was in the Ohio Penitentiary (his present whereabouts unknown); Karen continuing to live with said grandparents thereafter save for two brief intervals, the Rascos moving back to Van Zandt County in October 1953. However, Karen was at the Dallas home of her own mother, Wynnaline Stinson, when the suit of appellees for adoption was filed in Van Zandt County; and likewise on date of judgment of adoption—December 20, 1957; such existing locus of child becoming factors in appellants' plea of venue and to the Court's jurisdiction. The suit was prosecuted without their consent.

In above connection, appellees had plead the substance of Art. 46a Vernon's Ann. Civ.St., which reads:

"Except as otherwise provided in this Section, no adoption shall be per-

mitted except with the written consent of the living parents of the child; provided, however, that if a living parent or parents shall voluntarily abandon and desert a child sought to be adopted, for a period of two (2) years, and shall have left such child to the care, custody, control and management of other persons, or if such parent or parents shall have not contributed substantially to the support of such child during such period of two (2) years commensurate with his financial ability, then, in either event, it shall not be necessary to obtain the written consent of the living parent or parents in such default, and in such cases adoption shall be permitted on the written consent of the Judge of the Juvenile Court of the county of such child's residence; or if there be no Juvenile Court, then on the written consent of the Judge of the County Court of the county of such child's residence."

Section 3 of the Article also provides:

"No petition for the adoption of any minor child shall be granted until the child shall have lived for six months in the home of the petitioner; provided, that this requirement may be dispensed with upon good cause shown in the discretion of the Court, when the Court is satisfied that the home of the petitioner and the child are suited to each other."

In the venue appeal it is contended that appellees' ex parte proceedings, while in form of statutory petition for adoption, was admittedly an action for custody or repossession of the child and therefore patently maintainable in Dallas County. The appeal to its merits strongly assail the court findings of abandonment and failure in financial support over the statutory two year period; and while our conclusions of reversal of cause is based generally on appellants' first point (error in overruling of their plea to the jurisdiction), yet the record facts leading up to this unfortunate contest between parents and daughter over the latter's child are unusual; and being sharply in conflict, should receive brief mention. On issue of abandonment and failure of child support we summarize the following testimony of Mr. & Mrs. Rasco, age 51 and 47 respectively at time of trial.

That upon Wynnaline's marriage to Stinson, she left the household of the Rascos, never to return; however, leaving Karen to their care and custody. That in November 1952 on committal of Mrs. Rasco for a month at Terrell State Hospital, Mrs. Stinson had kept the child for three nights; then returning her to the home of appellees. In answer to a question of whether Wynnaline at said juncture made any statement about the future of the child, Mr. Rasco testified: "A. She told me and my mother and my sister that Norman quit her because she kept the baby three nights and that she was going to live with Norman if she could and she couldn't keep Karen any more and me and her mother would have to take her and do the best we could. She was going to live with Norman." Since such time, according to appellees, they have considered the child's care and support as their responsibility, its mother making no demand or indicating any desire that it be returned to her custody.

That upon removal of the grandparents and Karen to Van Zandt County in October 1953, it was not until the spring of 1955 that Wynnaline came to see her child; appellees enrolling it in the Fruitvale school in September that year and again in the fall of 1956; that about August 25, 1957, Mrs. Stinson had written appellees to bring Karen to Dallas for a visit and the purchase of clothing, they doing so, and upon appellants' refusal to return the child, the petition for adoption was filed.

That in 1949, Mr. Rasco had paid all hospital and medical bills incident to the birth of Karen; had advanced to Wynnaline sums of money to keep her then husband (Butler) out of the penitentiary; in-

clusive of payment of a $1,537 mortgage on Butler's car, selling it, and sending the proceeds to Wynnaline in Ohio; she also having wrongfully taken $1,000 from his checking account at a Dallas bank in 1953; the cash advanced totalling around $5,000 and that all of the payments claimed by appellant mother as having been made to him for support of her child were actually received and accepted as a credit on such debt.

On the other hand, Wynnaline testified at length to her steadfast affection for Karen, their separation being due to adverse and necessitous circumstances; Mr. Stinson in 1953 becoming involved in a Federal offense and sentenced to six months imprisonment in the Penal Institution at Seagoville; that nevertheless, she had paid $5 per week in cash for support of Karen during 1952 and 1953, and $5 to $15 per week in 1954. She admitted the 1949 advancements from Mr. Rasco, spent in effort to save the child's father from prison; denying any impropriety in the $1,000 withdrawal from the Dallas Bank, which account was carried on joint signatures; she having a right to the money used in part payment of a Dallas home. In evidence are twenty-eight cancelled checks, beginning August 30, 1954, more than one-half of which were payable to either Jesse Rasco or his wife, Edna, aggregating more than $900; Mrs. Stinson maintaining that same were for support of the child. Also a group hospitalization policy dated August 24, 1954 (issued to appellants in connection with Stinson's employment with the Guiberson Corporation), was in evidence with Karen shown as a dependent of the Stinsons; utilized by them to pay for her tonsillectomy in May 1957. It was developed on behalf of contestants that the Rascos had filed income tax returns for the years 1949, '50, '51, '52 and 1953, but none for the three subsequent years, claiming Karen as a dependent only for 1949. Appellants' exhibit No. 3 was a copy of a verified statement signed by Jesse P. Rasco to the Internal Revenue Service to effect that in 1955 he did not claim the child as a dependent, contributing to its support that year "possibly $100.00, representing milk, eggs and other foods raised"; and stating that Mrs. Wynnaline Stinson was the chief support of this dependent child. (Mr. Rasco testified that the paper was signed by him at request of his daughter without reading it; that the statements made therein were untrue; Mrs. Stinson requesting it for her own use and benefit; i. e., as a dependency deduction, thereby saving her "three or four hundred dollars.")

Mrs. Stinson stated that the long interval of her failure to visit the child following removal of the Rascos to Van Zandt County in October 1953 was due to ill feeling between Stinson and Rasco, same clearing up by the spring of 1955 when visitations back and forth were resumed; and that during such period of estrangement Mr. Rasco would bring the child to his mother in Dallas, thus permitting visitation by Wynnaline. Her exhibit of checks for support of child were mostly of 1957 date, though some were for 1956 and earlier. She testified to having been continuously employed since July 1950, except for six weeks out for birth of child; first earning $165 per month now raised to $325. Norman Stinson testified to a present salary of $74 per week; and that since 1955 when they acquired a home with adequate facilities, he has wanted Karen to live with them; their family now consisting of a five year old boy.

Pursuant to further provision of Section 6a above, the record contains a certificate of the County Judge of Van Zandt County consenting to the adoption of this child by appellees. Clyde Elliott, appointed by the District Judge to make investigation (Section 2), filed on October 15, 1957, a written report in compliance with the Statute; in effect, that the child was a proper subject for adoption, that petitioners therefor were suitable persons, having a good home with proper environments; the subject child during its lifetime having "been in the custody and control of said petition-

ers except for the past two months when she was taken from petitioners by her mother, Wynnaline Stinson". And at the plea of privilege hearing (November 2, 1957) it was stipulated that the Stinsons reside in Dallas County with Jessica Karen Butler presently in their custody.

In plea of privilege, appellants had alleged that the proceeding for adoption was admittedly filed for the sole purpose of obtaining custody of the child and hence was an action maintainable only in Dallas County; complaining here that they were not allowed to develop the issue until trial of cause on its merits; and further, by plea to the jurisdiction, they charge a want of authority on part of the trial court to entertain any petition for adoption in that at time of filing same, also at time of grant of adoption, the subject child was in custody of its own mother at her home in Dallas— 2035 Alhambra Street.

These further facts should be detailed in such connection: Mrs. Stinson had frankly admitted that her request to the Rascos in late August 1957 to bring Karen to Dallas for a visit and purchase of clothing was really for the purpose of obtaining and retaining its custody; on discovery of the true situation, Mr. Rasco making violent protest, and on his return to Van Zandt County the petition for adoption was filed. Then followed various conversations between the parties, appellees insisting on a resumption of custody; Mr. Rasco stating to Mrs. Stinson that if she would return the child and pay him $150 (legal expenses incurred) the suit would be dropped. He testified further on examination by his own counsel:

"Q. All right now. About telling Wynnaline you would drop the proceedings if she would return the child back to your custody? A. Yes sir.

"Q. You will do that today? A. Yes sir. .

"Q. You will still dismiss the proceedings, won't you? A. Yes sir I will be glad to. I would rather do it that way.

"Q. *You are pursuing the only legal remedy you know of to obtain custody of the child. A. Yes sir."* (Emphasis ours.)

Mrs. Rasco testified in the same connection as follows:

"A. Now I'll tell you the way I see it—if she will let her come back home and sign a piece of paper saying that she would not worry her daddy and me about the child—if she would do that and sign that paper saying she would let us alone and let me raise this child like I have for the past eight years I will just forget the adoption and go home. There will not be any more of this court and trial and I'll tell you why. The child has been living with me * * *.

"Q. And is it true that you have never agreed to dismiss this proceeding unless they return the child? A. That is the only way.

"Q. And that proposition still goes? A. That still goes. Even to now."

The parties take widely different views relative to the foregoing state of facts as well as of the law properly to be applied. Appellants contend that Karen has been in their lawful custody and possession from inception of suit to conclusion; preclusive of recourse by appellees to the adoption statute, with the trial court wholly without jurisdiction to thus deprive the mother, Mrs. Stinson, of all parental rights. On the other hand, appellees assert superior rights to the child, considering its relinquishment to them in infancy by the mother, they having ever since been charged with its rearing and maintenance in their Van Zandt County home until August 25, 1957, when Wynnaline obtained custody and possession of the child in Dallas County by "artifice and deceit". The question is thus posed of what *were* the rights of the respec-

tive parties to custody on above material date?

"When a parent, by voluntary agreement or otherwise, has relinquished custody to a third person, and has permitted such person to perform the duties of a parent, a new domestic relation is created which inures to the benefit of the child. The law does not prohibit such a transfer by the parent, and allows the child to reap the benefit therefrom whenever its welfare will be promoted." 31 Tex.Jr. p. 1295. The possession thereby obtained by these foster parents was prima facia lawful. Legate v. Legate, 87 Tex. 248, 28 S.W. 281. The above quoted principle is ordinarily to be invoked on suit of a natural parent to regain custody and control; the child's best interest and welfare being the dominant issue for determination. Similarly, the prior relinquishment of this child to custody of appellees did not preclude Mrs. Stinson from later asserting parental rights. Vol. 29A Tex.Dig., Parent and Child, . She had been awarded final custody of the child in the 1951 divorce proceeding; and her method of repossession, though devious, was permissible; sufficiently so as to warrant her refusal to restore custody to appellees.

While adoption statutes are to be liberally construed in favor of minors in order to effectuate their beneficial purpose, Woodall v. Schmudlach, Tex.Civ.App., 299 S.W.2d 780, the rule of strict construction applies in favor of a non-consenting parent. Jones v. Willson, Tex.Civ.App., 285 S.W.2d 877. Especially so "in those cases where it is claimed that owing to misconduct his consent to the adoption is not required. Every intendment should be made in such case in favor of the parent's claim; and where the statute is open to construction and interpretation, it should be construed in support of the parent's natural rights." 1 Am.Jur. pp. 626, 627. On inception of this proceeding for adoption, Jessica Karen Butler was not living in the home of appellees within purview of the statute, Sec-

tion 3, and on disclosure of the true situation to Judge Dawson the proceedings in question ought not have been entertained. We may assume the right of appellees to invoke the adoption statutes while this child was actually living in their home, but due to changed conditions at time of filing the petition, their rights had been reduced to a contest involving its custody; and resort to adoption proceeding may not be had as an alternative remedy. Platt v. Moore, Tex.Civ.App., 183 S.W.2d 682; Burran v. Fuller, Tex.Civ.App., 248 S.W.2d 1015.

Appellees say "that if, for any reason, the order of the District Court of Van Zandt County, appealed from, should not stand as a valid adoption decree, it nevertheless should stand as a valid order awarding the care, custody and control of Karen Butler to the appellees, as said Court, and no other, under the facts reflected by the record had *venue* to try the custody and adoption issues". (Emphasis ours.) The conclusion just stated is erroneous and Ross v. Orr, Tex.Civ.App., 214 S.W.2d page 150, cited in support, is not in point. The matter of venue was not involved in the custody suit brought by the child's mother in Ross v. Orr. Venue of the present action, considered as one for change of custody, would necessarily have been at the place of defendant's residence upon assertion of a plea of privilege. Yeagle v. Bull, Tex.Civ.App., 235 S.W.2d 226; Steele v. Steele, Tex.Civ.App., 251 S.W.2d 258; Herbort v. Weinheimer, Tex.Civ.App., 293 S.W.2d 673; Duncan v. Duncan, Tex.Civ. App., 300 S.W.2d 149. To the instant petition for adoption however appellants' plea of privilege was not available; Art. 46a, Sec. 1, providing that same may be filed in the county of petitioners' residence. On the contrary appellants' plea to the jurisdiction must be sustained because neither at time of filing of proceedings nor on date of judgment was the child in question a proper subject for adoption. The order effectuating an adoption of Jessica Karen Butler is accordingly set aside and vacated. Judgment of trial court is reversed and judg-

ment here rendered denying appellees' petition for adoption.

The appeal from order overruling plea of privilege is affirmed.

Cause reversed and judgment rendered against appellees as prayed by appellants.