**Ali AL KHAFAJI, Appellant,**

v.

**William A. MEITZEN, Appellee.**

**No. 11606.**

Court of Civil Appeals of Texas.

Austin.

May 29, 1968.

Rehearing Denied June 19, 1968.

C. Dean Davis, Austin, for appellant.

John J. Irvin, San Antonio, for appellee.

HUGHES, Justice.

In this case the trial court granted the petition of William A. Meitzen to adopt Joseph Khafaji, a male born December 9, 1962, the son of Ali Al Khafaji and Janet Meitzen, the present wife of William A. Meitzen. The mother of Joseph consented to his adoption by Petitioner. The father did not. The only statutory ground upon which this decree of adoption is sought to be sustained is that appellant did not contribute substantially to the support of Joseph for a period of two years commensurate with his financial ability.[1]

Appellant's first two points are that there is no evidence to support a finding that he did not contribute to the support of his

child for a period of two years commensurate with his financial ability and that the evidence in this respect is against the great weight and preponderance of the evidence. We sustain this latter point after a consideration of all the testimony which we summarize as briefly as we can consistent with our duty.

Appellant and Mrs. Meitzen were married in Bagdad, Iraq, in August 1961. Joseph, their son, was born in Bagdad on December 2, 1962. The parents were divorced in Bryan County, Oklahoma, by a decree entered July 28, 1964, effective, as to divorce, six months later. The divorce was sought by Mrs. Meitzen and was granted on the ground of "incompatibility." Appellant was granted visitation rights with his son by this decree. These rights were terminated by an order of the District Court of Bryan County, Oklahoma, dated April 16, 1965. In the divorce proceedings Mrs. Meitzen did not ask for child support and none was awarded. Neither Mrs. Meitzen nor anyone in whose care Joseph has been has ever requested child support from any court or from appellant.

The instant suit was filed March 24, 1967.

Mrs. Meitzen testified that she received a $50.00 check from appellant in the Fall of 1965 made payable to "Janet L. Khafaji" which she returned writing "inside the envelope" the words "wrong name on check." The divorce decree had restored the maiden name of "Janet Mueller" to Mrs. Meitzen. Mrs. Meitzen testified that if the check had been properly made out she would have put it in a trust fund for Joseph. Mrs. Meitzen, on cross examination, testified that she could have cashed this check if she had desired. The evidence discloses that appellant at the time did not know that his wife had changed her name and he did not see the notation written on the inside of the envelope.

---

1. Art. 46a, Sec. 6(a), Vernon's Ann.Tex. Civ.St. Actually the petition alleges that appellant was " * * * physically and

mentally able to contribute to the support of said child. * * * "

On February 15, 1966, appellant sent a $30.00 check to and payable to the Bryan County District Court in Oklahoma with the notation "child support" thereon. This check was returned to him uncashed with the suggestion from the clerk that payments be made directly to Mrs. Meitzen. There is evidence that a few days later, February 28, 1966, appellant purchased a money order payable to Mrs. Janet Mueller Al Khafaji which was sent to her but not cashed.

Mr. Marion Opala, a practicing attorney in Oklahoma, professor of law at Oklahoma University and, at the time of trial, on the legal staff of the Supreme Court of Oklahoma, testified that he had represented appellant beginning about October, 1965. We quote from his testimony:

"Q   Now then, is there currently a matter before the Oklahoma Supreme Court involving the former Mrs. Khafaji and now Mrs. Meitzen, and Ali Khafaji?

A   Yes, sir, there is presently pending in the Oklahoma Supreme Court an appeal from the decree and order of the District Court of Bryan County, and one of the errors raised is failure of the trial judge to determine the financial responsibility of Mr. Khafaji toward this child, even though a request, tender and testimony were produced in open court to so adjudicate that issue.

Q   Mr. Opala, on how many occasions was this issue raised by you on Mr. Khafaji's behalf?

A   I raised it twice by my pleadings. I raised it by argument. I elicited the testimony of Mr. Khafaji as to his financial responsibility in order to allow the trial judge to fix the amount of child support, based upon Mr. Khafaji's then earnings, and also I elicited testimony on the stand from Mrs. Meitzen as to whether or not she wanted any child support, and she answered that question, not only in the negative, but also through her counsel, she advised the Court in open court, she advised the Court, 'We want no child support. We ask for no child support.' And I believe those were her exact words.

Q   The issue of child support, then was raised by Mr. Khafaji himself, as I understand?

A   Indeed.   We raised that issue.

Q   And refused, as I understand it, by Mrs. Meitzen?

A   That is correct, sir.

Q   Now, would you explain to the Court your reason—first, I will ask you, did you have occasion to get a temporary restraining order against Mrs. Meitzen?

A   Yes, sir, I did.   I procured that order.

Q   Will you explain to the Court your reasons for doing so?

A   Your Honor, at the time we first had notice of these adoption proceedings being filed, there was pending before the Oklahoma Court my motion for new trial, directed to the order of which Mr. Khafaji now complains. I was fearful that any further proceedings in the adoption suit would render my appeal moot, and for that reason, I procured an order restraining Mrs. Meitzen from actively participating in the adoption.

THE COURT: Is that the order referred to by the parties here as the order cancelling any visitation privileges?

A   No, sir.   Your Honor, that is the order which was procured in order to restrain Mrs. Meitzen from proceeding or actively participating in

this adoption proceeding before your Honor.

THE COURT: I know.

A The order on appeal, Your Honor, is an order of the trial judge in which he denied a motion to fix child support, determine his financial responsibility and allow him access to the child under conditions amounting to controlled visitation in the presence of the mother or of the maternal grandparents.

THE COURT: That was in the case in which the original divorce between these parties was involved?

A That is correct."

The order of the District Court of Bryan County, Oklahoma enjoining Mrs. Meitzen from allowing further proceedings to be taken in this adoption case was placed in evidence.

We quote further from the testimony of Mr. Opala:

"Q Mr. Opala, I will ask that you briefly explain to the Court the kind of situation you came into in September of 1965 in the representation of Mr. Khafaji, as briefly as you can.

A I will try to be very brief. When Mr. Khafaji came to my office, he wanted to appeal from the order permanently enjoining him from all access to his child. I checked the record, and I determined that his appeal time had expired. So I advised him he could not appeal. The appeal time was gone, but he could file a motion to modify the order, which I did.

\* \* \* \* \*

At the same time, recognizing the necessity to protect him and the necessity for a regular adjudication of child support, I not only tendered child support by my pleadings, but

I requested the Court to adjudicate that issue in no uncertain terms. Then the case came on for trial before a judge who later, at the conclusion of the evidentiary proceedings, disqualified because of my request, because it came out that he had referred Mr. Khafaji to me and had had some conversations with Mr. Khafaji which I thought his knowledge would have been prejudicial to Mr. Kahfaji and I asked the judge to disqualify, and he did. And in September of 1966, the motion came on for hearing before another judge.

The judge took it under advisement, ruling on the matter on January 17, 1967. By his order, the new judge simply held that there was no change of conditions and refused in open court to determine the financial responsibility of Mr. Khafaji toward his child.

Q And this brings us to date with respect to the proceedings as they transpired in Oklahoma?

A I believe so, yes, sir.

Q Is the appeal being prosecuted with due diligence?

A So far as I know. It is in the hands of another lawyer now, Mr. Sonara.

Q Because of your connection with the Oklahoma Supreme Court?

A Yes, sir."

We quote the following from the testimony of Mrs. Meitzen:

"Q Now then, do you recall your lawyer's statement in court in Oklahoma with respect to child support?

A No, I don't.

Q I will ask you whether or not you recall your lawyer saying this: 'This man has not furnished support for the child, although we have not asked for it and we do not ask

for it now.' Do you recall that statement?

A That's right.

Q Now, you say you have not refused anything that Mr. Khafaji has offered by way of support to the child?

A That's right.

Q What about the two offers in open court to support the child?

A These were offers to let the Court set up a certain amount to require him to pay.

Q Aren't we just talking about semantics—isn't this an offer of this man to support the child, whether it is by Court order or voluntary or involuntary; it is an offer to support this little child, isn't it?

A Well, it is an offer under conditions which I did not want to go into. I did not want to do it that way.

Q So you did not want this done under the Court's jurisdiction at all, did you? You just wanted it to be paid directly to you?

A I did not want to require him to pay anything. I did not want to put him in the position where I would have to constantly be bringing it back into court.

Q Well, you don't know that you would have constantly had to bring it back into court, do you?

A I have a pretty good idea that is the way it would be.

Q You have never tried it, did you?

A I was married to him for three years.

\* \* \* \* \*

Q Are you aware of the fact that the Court virtually in every divorce case has jurisdiction to set amounts and by virtue of payments of those amounts, supervise them to be sure that they are paid?

A Yes, I realize that.

Q Do you realize this is one of the functions of the District Courts here in Texas, as well as in Oklahoma?

A I realize this, and I think it is a very good system in many cases.

\* \* \* \* \*

Q So, as a matter of fact, you have refused the offers that he made by virtue of payment through the court mechanism in Oklahoma, have you not?

A That's right."

The record shows that shortly after the Oklahoma trial court refused to fix child support allowance appellant, on the advice of Mr. Opala, started a savings account for Joseph and, at the time of this trial, there was more than $400.00 in it.

There is ample evidence in the record that appellant is financially able to make substantial child support payments, his income since the divorce having been $6,000.-00 or more per year.

Mrs. Meitzen testified that on two occasions since the divorce she had seen appellant but that neither time did he offer to support his child. Also, that when they met in court proceedings he never personally approached her or her attorney and offered to make support payments. Mrs. Meitzen also testified that if the checks[2] which appellant had sent her were tendered now and properly made out, she would accept them.

There is evidence that Joseph had a minor operation and a hospital bill of $150.00 was incurred and that appellant, although he offered to pay it and received a bill, did not pay it.

2. Appellant sent one check to appellee before the divorce payable to "Um Yusef," meaning "Mother of Usef." She returned this check.

■ The cases hold, in applying the provision of Art. 46a now under consideration, that failure to support a child is excused if the person obligated has reason to believe and does believe that it will not be accepted. Gilley v. Anthony, 404 S.W.2d 60, Tex.Civ.App., Dallas n. w. h. (1966); Newton v. Paslay, 307 S.W.2d 305, Tex. Civ.App., Dallas n. w. h. (1957).

■■ The burden here was on appellee to prove by a preponderance of the evidence that appellant had failed to contribute substantially to the support of Joseph for a period of two years commensurate with his financial ability in order for appellee to be entitled to adopt Joseph and strip his father of parental rights including the loss of the father's name. We hold that appellee did not discharge this burden and the contrary finding of the trial court is so against the overwhelming weight of the evidence as to be wrong and manifestly unjust.

The situation here is very unusual. A parent locally charged with failing to support his child is in the courts of a sister state asking, over the objections of the parent testifying in support of such charge, that the court fix the amount of such support and appealing to the highest court of that state from a trial court order denying his request. This certainly does not fit the role of a parent unwilling to support his child.

We do not presume to advise the Supreme Court of Oklahoma as to the appeal to it by appellant, but some court, somewhere, sometime should define the financial obligation of appellant to his child in a manner which will grant him the satisfaction of being a responsible father and, at the same time, upon compliance, protect him from the complete loss and alienation of his son whom this record shows he loves very much.

Appellant's point that the report of the State Department of Public Welfare required by Sec. 2 of Art. 46a, V.T.C.S., was not introduced in evidence although filed among the records of this cause should not arise upon retrial.

■ Appellant also complains of the trial court's action in failing to stay the proceedings in this cause until the Supreme Court of Oklahoma has decided the matter previously mentioned herein. We are not prepared to say that this was an abuse of discretion. Neither would we say that granting a reasonable stay would have been an abuse of discretion.

The record in this case does not disclose whether the trial court is the Juvenile Court of Travis County. This should be shown, if true, in order to comply with the relevant provisions of Sec. 6, Art. 46a.

The judgment of the trial court is reversed and this cause is remanded.

Reversed and remanded.