**Joan BAUMAN, Appellant,**

v.

**Clifford Dale HEARD et ux., Appellees.**

**No. 16987.**

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 31, 1969.

Rehearing Denied Feb. 28, 1969.

Penix, McCracken & Andrews, and Eugene W. McCracken, Graham, for appellant.

Thornton & Thornton, and R. E. Thornton, Olney, for appellees.

OPINION

PER CURIAM.

The trial court granted the petition of Geneva Heard and husband for the adoption of the four minor George children. The natural mother, Joan Bauman, appealed.

Mrs. Heard's former name was George.

Ronald Dean George is her son.

Joan Bauman was formerly married to Ronald Dean George. The four children involved were born of that marriage.

Because of the several marriages of both Joan Bauman and Geneva Heard, we, to avoid name confusion and for clarity, will refer to both by their given or first names.

The petition for adoption alleged abandonment by the parents, and failure of the parents to support or contribute to the support of the children commensurate with their financial ability for a period of two years preceding the filing date of the petition, as provided in Art. 46a, Sec. 6, Vernon's Ann.Civ.St.

Joan and Ronald Dean George were divorced in May, 1963. Joan was granted custody of the children. Mr. George was ordered to pay child support.

The petition for adoption was filed December 6, 1967. Ronald Dean George, the father, was cited but made no appearance. Hearing on the adoption petition was had on January 18, 1968, and judgment granting the adoption was rendered on April 16, 1968.

Geneva testified: she and her husband live on a farm near Olney. Early in 1964, Joan called her from El Paso, told her she and her current husband, Simpson, were having trouble and asked her to come for the children. Geneva's mother picked them up in El Paso and kept them in her home in Wichita Falls for two months. Since July of 1964, Geneva and husband have kept all four children in their home in Young County.

Sometime in early 1964, Joan returned to Wichita Falls, but later left, looking for work. She returned to Wichita Falls in August, and went back to work.

Joan has never contributed anything for the support of the children. She has given them some clothing, Christmas presents and birthday presents. Joan has never sent Geneva any money to use for the benefit or support of the children. Geneva's son, the father of the children, has never contributed anything to her for support of the children, although he was for some time in the Navy and later was "carpentering."

In November, 1967, Joan called and said she wanted the children back with her. Geneva has never asked Joan for support money. About the time Geneva got the children she heard Joan say she was making $60.00 or $70.00 per week.

Joan formerly visited the children about twice a year but the last year she visited them more often, sometimes spending the night.

In November when Joan asked for return of the children, Geneva said, * * * I imagine we would have to go through court because we had the legal custody, * * *."

Joan came back on Saturday before Christmas and wanted to take them. Geneva told her she had filed for adoption.

Geneva's testimony concluded: "When we asked for legal custody (1964) I said that she would have to prove that she could support them and give them a good home then before she could take them back." She thinks that if the adoption is granted "The only thing I think I would have would be the custody of the children and I have very definitely told them to love their mother and to respect her."

Clifford Dale Heard, husband of Geneva, testified: "* * * she (Joan) has never said anything to me about leaving them or nothing else or ask me if I would take them or if I could support them or make a living or nothing. She never mentioned anything that way to me at all." Later, seemingly contradicting the above, he testified: "And I told her before she ever left them there, * * * if she ever left the kids on me that I was going to keep them or do my best to." Apparently he never asked Joan to help support the children. He has spent six to ten thousand dollars raising the kids and he feels "like they was mine." In 1964 the county court gave him and Geneva "legal custody" or "legal guardianship."

The order was not introduced in evidence.

Joan Bauman, mother of the children, and appellant here, testified: she divorced George in May, 1963 and married Simpson in June. She stayed with Simpson six months, and divorced him in January, 1965. She married Bauman, present husband, in July, 1965. She, while living with Simpson, received support payments through his service connection. When they separated,

the payments stopped. From time of separation from Simpson to marriage to Bauman, she worked as a waitress at various places and was out of work much of the time. Generally when working she received $37.50 per week, plus $5.00 to $10.00 per week in tips.

She gave the children a little money when she could afford to. She offered Geneva money on several occasions but Geneva refused to accept any money. She had no money to offer until she married Bauman. As soon as she and Bauman moved to Oklahoma and started making more money she offered to pay money to Geneva, which was refused. At time of hearing she was earning $285.00 as a keypunch operator. Her husband earns good hourly wages. She, at time of hearing, had been earning $285.00 per month for six months.

While married to Simpson, for the purpose of receiving service allotment child support, she certified that George was no longer financially responsible for the children.

(So far as the record shows the district court has never released George from payment or modified the child support payments, as provided in the divorce decree.)

Following the divorce, George made the $40.00 per week child support payments four or five months. He has never made a payment since sometime in 1963.

When divorced from George she was unemployed. She did not part with the children until several months after she separated from Simpson. After obtaining the twins, Geneva told Joan she would keep the children. Joan was working nights. She always understood that when she wanted to and could financially support them she could take the children back.

While working nights she could not visit the children often because of transportation problems but would often call them,

and would see them when relatives brought them to Wichita Falls. After she married Bauman she visited them regularly.

She and Bauman now live in Midwest, Oklahoma. After moving to Oklahoma she went to school and learned to be a keypunch operator. She and Bauman have bought a house and now she is in position to take care of her children.

When Joan asked for the children in November, 1967, Geneva said, "Well, she didn't know." On the 16th of December she talked to Geneva again. " * * * I asked her if there were going to be any difficulties and she said 'No'. * * *" Geneva did not tell her she had already filed an adoption petition, and said nothing about any possible adoption.

On December 23, Mr. Heard told Joan, " 'they had filed for adoption and that he had paid out around $10,000.00 for those children's support and they were his * * not mine.' "

She is now able to care for the children and wants them in her home. She understood that she had a specific understanding with Geneva that she would take the children back when she was financially able. Until within the last year she has not been financially able to support them.

She never offered Heard money and he never asked her for money.

■ Although the obligation to support and educate their children rests on both parents, the duty to do so is primarily that of the father as head of the family. He is not released from his obligation because of the fact that his child or children may be in the custody of other persons. Dilger v. Dilger, 271 S.W.2d 169 (Tex.Civ.App., 1951, no writ hist.).

In the instant case the father, George, was specifically ordered by the court to pay $40 per week for the support of the children. Except for a few months in 1963

he has flagrantly disobeyed that order. His mother, who now seeks to adopt the children, has not asked her son to fulfill his obligations, or to pay anything to help support the children. Instead, she asks for adoption because the mother, who was not ordered to pay any child support, and who was given legal custody at the time of the divorce, has not supported the children.

While adoption statutes are to be liberally construed in favor of minors in order to effectuate their beneficial purpose, Woodall v. Schmudlach, 299 S.W.2d 780 (Tex. Civ.App., 1957, no writ hist.), the rule of strict construction applies in favor of a non-consenting parent. Jones v. Willson, 285 S.W.2d 877 (Tex.Civ.App., 1955, ref., n. r. e.)

Except for the names of the people, and some fact differences not material to a decision here, the opinion by Justice Langdon in Smith v. Waller, 422 S.W.2d 189 (Tex.Civ.App., 1967, ref., n. r. e.), might well have been written for the instant case.

We adhere to our holding in Smith v. Waller, supra, and now cite that case and the applicable authorities discussed therein as controlling and requiring that the adoption judgment be reversed and judgment rendered that adoption be denied.

We, of course, do not disturb any court order heretofore entered (except the adoption judgment) concerning the guardianship or custody of the children.

Neither are we disturbing the present physical custody the Heards now have of the children.

The question of whether the best interest of the children will be served by continuing their custody with the Heards is not before us, Platt v. Moore, 183 S.W.2d 682 (Tex.Civ.App., 1944, ref., w. m.), and our opinion is not intended to prejudice the position of either party in the event of a future custody contest.

Reversed and rendered.

## ON MOTION FOR REHEARING

In their motion for rehearing, appellees say the court erred in stating that the petition for adoption alleged abandonment by the parents.

Paragraph (6), page 1 of appellees' First Amended Petition, page 15 in the transcript, reads: "Both the living and natural father and mother of such children sought to be adopted have voluntarily abandoned and deserted such children, and have surrendered complete care, custody and control of such children to petitioners. * * *"

If that allegation was stricken by amendment or deletion, such is not shown in the transcript.

Appellees allege the court erred in holding "Until within the last year she has not been financially able to support them (the children)" and "As soon as she (appellant) and Bauman moved to Oklahoma and started making more money she offered to pay money to Geneva. * * *"

While we did not make such finding and we did not hold such statements to be true, we do feel we owe appellees a clarification.

We call attention to the last paragraph on page 3 of our opinion, beginning, "Joan Bauman, mother of the children, and appellant here, testified: * * *." Following the word "testified" everything said is in summarization of and quotations from appellant's testimony through and including the statement, "She never offered Heard money and he never asked her for money," on page 417 of our opinion.

We now see, that by breaking her testimony up into readable paragraphs instead of including it in one long paragraph, confusion could result to the reader.

We want to make it clear the words used were appellant's words, not ours.

We did not find facts and we did not hold that any of appellant's testimony was true.

**420**

The findings of the trial court, both specific and implied, are binding on this court.

We differed with the trial court only as to the law applied to the facts as he found them to be.

The motion for rehearing is overruled.

Overruled.