Clifford Dale **HEARD** et ux., Petitioners,

v.

**Joan BAUMAN, Respondent.**

No. B–1462.

Supreme Court of Texas.

July 9, 1969.

Rehearing Denied July 30, 1969.

---

Thornton & Thornton, R. E. Thornton, Olney, for petitioners.

Penix, McCracken & Andrews, Eugene W. McCracken and Ken Andrews, G. D. Hinson, Graham, for respondent.

SMITH, Justice.

This is an adoption proceeding. On December 6, 1967, petitioners filed this proceeding seeking to adopt four minor children born to the marriage of Rhonell Dean George and Joan George. This marriage was dissolved on May 8, 1963, by judgment of the District Court of Wichita County, Texas, and custody of the four minor children was awarded to the mother with right of visitation by the father at "reasonable times and circumstances."

The judgment ordered that the father "pay into the office of Howard Large, Chief Probation Officer of Wichita County, Texas, at the Courthouse in Wichita Falls, Texas, the sum of Forty and 00/100 ($40.00) Dollars per week to be delivered to the plaintiff herein to be used by her for the support and maintenance of said minor children; that the first payment is to be made on or before Friday, May 10th, A.D.1963, and a like payment on or before Friday of each week thereafter until each of said children becomes eighteen years of age, or until further orders of this Court." The judgment of divorce also recites that the mother was "a fit and proper person to have the custody and possession of said minor children."

The events leading to the filing of the adoption proceeding are these. The petitioners, Geneva Heard, the paternal grandmother of the four minor children, and Clifford Dale Heard, her present husband, seek to adopt the four minor children pursuant to Article 46a, § 6,[1] Vernon's Annotated Civil Statutes. It is alleged in the amended petition for adoption:

"Both the living and natural father and mother of such children sought to be adopted have voluntarily abandoned and deserted such children, and have surrendered complete care, custody and control of such children to petitioners for a period of more than two years, having left such children in the care, custody, control and management of such petitioners since the dates above written. Further, petitioners would show the Court that neither the natural father nor

the natural mother of such minor children have supported any of such children or contributed to their support for a period of more than two years next preceding this date commensurate with the financial abilities of either the natural father or the natural mother."

The natural mother, now Joan Bauman, the respondent, appeared and contested the right of the petitioners to adopt her children. The father, Rhonell Dean George, made no appearance. There appears in the transcript the written consent of the County Judge of Young County, Texas, to the adoption of these minor children.

On April 16, 1968, after a trial before the court without a jury, the trial court entered its judgment of adoption. The judgment recites, in part:

"[T]hat the matters, facts, and grounds set out in such petition are all and singular true and correct; that the proof upon trial, evidence that the contestant of this application to adopt being Joan Bowman (sic) has for *a period of more than two years next preceding* the filing of the application to adopt failed to contribute to the support of said minor children *commensurate with her ability* to so contribute to such support and that she is the natural mother of such minor children. The proof further shows that Ronald (sic) Dean George, the natural father of such children has failed for a period of two years or more next preceding the filing of such petition to contribute to the support of such minor children commensurate with his ability

---

1. "Sec. 6. Except as otherwise provided in this section, no adoption shall be permitted except with the written consent of the living parents of the child; provided, however, that if a living parent or parents shall voluntarily abandon and desert a child sought to be adopted, *for a period of two (2) years*, and shall have left such child to the care, custody, control and management of other persons, or if such parent or parents shall have not contributed substantially to the support of such child during *such period of two (2)*

*years commensurate with his financial ability*, then, in either event, it shall not be necessary to obtain the written consent of the living parent or parents in such default, and in such cases adoption shall be permitted on the written consent of the Judge of the Juvenile Court of the county of such child's residence; or if there be no Juvenile Court, then on the written consent of the Judge of the County Court of the county of such child's residence * * *." [Emphasis added.]

to so contribute * * *." [Emphasis added.]

On appeal, the Court of Civil Appeals in and for the Second Supreme Judicial District of Texas, reversed the judgment of the trial court and rendered judgment that the adoption be denied. Tex.Civ.App., 442 S.W.2d 416. We affirm.

Although the petition for adoption contains allegations of abandonment of the children, the petitioners have disavowed reliance thereon in their motion for rehearing filed in the Court of Civil Appeals, their brief in this Court, and in oral argument. The ground for adoption, without the written consent of the mother, is restricted to that of her failure to contribute to the support of the four children commensurate with her ability for a period of two years next preceding the filing of the application for adoption on December 6, 1967. The record contains facts which have no bearing upon the question of whether or not the respondent failed to contribute to the support of the four children as provided in the statute. We confine our statement to the facts relevant to the question presented for our decision. The respondent has married twice since being divorced from the father of the children. In March, 1964, after her second marriage, Joan requested the petitioner, Geneva, to take the children into her home. Geneva testified that two of the children were immediately received, and in July, 1964, the other two arrived to live with the petitioners. Other than sending presents and some clothing, the respondent contributed nothing toward the support and maintenance of the four children. Likewise, the father failed to contribute to the support and maintenance of the children. With the exception of a few payments made immediately after the date of the divorce decree, the father failed to comply with the judgment of the court holding him legally liable for their care and maintenance. The mother visited the children occasionally and made no effort to regain possession of the children until sometime in November, 1967.

At no time during this period did the petitioners request financial aid from either the father or mother. Geneva owned, at the time of the arrival of the children in her home, some property in Wichita Falls, consisting of "a two-story house and duplex." The children, however, lived with the petitioners on Mr. Heard's farm near Olney, Texas. Mr. Heard testified that he owned a 320 acre farm and the house where he lived; he had never requested any one to help support the children; he became attached to them; he spent "over three or three and a half years I imagine it, figured up, it would cost a man $150.00 or $200.00 a year, I mean a month on the four kids to raise them by the time you pay for school, clothes, school supplies, the insurance." Geneva testified that Joan first mentioned taking the children in November, 1967. When asked, "What did you tell her?" Geneva replied, "I just told her I didn't know. She asked me when she could get them and I told her, I imagine we would have to go through Court because we had the legal custody, and that was the only thing I said about it." Joan left and returned on "Saturday before Christmas on Monday and wanted to take them then." It was then "I told her that we had filed for adoption." Joan was called as a witness by the Heards. She testified that the reason she left the children with the Heards was because she was having marital difficulties with her second husband; receiving no funds from the father of the children and none from her second husband. She testified that she was unemployed for various reasons part of the time and when she was employed she earned approximately $37.50 per week, plus tips, estimated to be from $5.00 to $15.00 per week, while working as a waitress in a cafe; she offered the Heards money for the support of the children after she married Mr. Bauman in July, 1965, but the offers were refused; she began earning money as an IBM operator about six months before the trial; she and her husband moved to Oklahoma and it was there that she began a study course in operating

IBM Machines; she earned approximately $285.00 per month and her husband was earning $2.99 per hour. It was during this time that she offered money to the Heards. The Heards admitted that the mother visited the children more often in 1967, and that Joan gave a dollar occasionally as a present to the children. However, the Heards did not deny that Joan offered money to them during the latter part of 1967, for the support of the children.

Petitioners' only point of error presented in this Court is stated in the petition for writ of error, as follows:

"The sole and only point of error in this case is that the Court of Civil Appeals erred in holding that the exception of two year failure to support set out in Article 46a Section (6) Vernon's Anno. Civ. Statutes is of no consequence, is not the law, and is not to be considered by the Court in the event of contest by either natural parent."

Although this point does not precisely urge that there was some evidence to support the trial court's judgment of adoption, when we look to the statement and argument under the point, we conclude that the question of whether or not the petitioners discharged their burden of alleging and proving that the respondent did not contribute substantially to the support of the four children for a period of two years commensurate with her financial ability, one of the exceptions set out in Section 6 of Article 46a, Vernon's Annotated Civil Statutes, is properly before us for determination.

■ At the outset, we deem it necessary to point out that while we affirm the judgment of the Court of Civil Appeals, we do not approve the reasons assigned for its judgment denying the adoption. The Court relied heavily upon its decision in the case of Smith v. Waller, 422 S.W. 2d 189 (Tex.Civ.App., 1967, ref. n. r. e.), in reaching its conclusion in the present case. We find that Smith v. Waller is not controlling here. That case involved both

the exception of abandonment and failure of a parent to contribute substantially to the support of children for two years commensurate with financial ability. Furthermore, we specifically disapprove the language in Smith v. Waller, adopted as controlling by the Court of Civil Appeals here, which, in effect, amounts to a holding that once a decree is entered directing one of the parents to support the children of the marriage, thereafter, regardless of the fact that the supporting parent has become penniless and the other parent is able financially to support the children, the latter has no obligation to do so.

■ The petitioners argue that the reported cases "leave one hopelessly confused as to the rights of parties to adopt children." The cases reviewed by the petitioners in their brief do not include the case of Lout v. Whitehead, 415 S.W.2d 403 (Tex.Sup.1967). In that case, we were called upon to construe the statute involved here. We held that once a "two year period of unexcused nonsupport occurs, an adoption of the child without the consent of the father may be granted pursuant to the statutory provisions." We held in Lout v. Whitehead that the evidence established a two year period of unexcused nonsupport and upheld the trial court's judgment of adoption. Here, as in *Lout,* the trial court granted the adoption. However, we hold that the facts in this cause are sufficient to excuse the respondent from the necessity of actually contributing toward the support of the children commensurate with her ability, in that the respondent committed them to the care of their grandmother. As the facts show, the mutual arrangement between the petitioners and the respondent provided adequate care for the welfare of the children. Thus, it is seen that there is no evidence that the petitioner has committed any act which would warrant the adoption of the children without her written consent.

■ There is nothing novel in the approach that a parent may, in some situations be excused from the two year non-

support provision of the statute. For example, in Al Khafaji v. Meitzen, 429 S.W.2d 174 (Tex.Civ.App.1968, writ ref'd w. o. j.), the Austin Court of Civil Appeals held that in applying Article 46a, § 6, failure to support is excused if the parent has reason to believe and does believe that any money offered will not be accepted.

■ While adoption statutes are generally given a liberal construction, the rule of strict construction applies in favor of a non-consenting parent. This is especially true in cases in which it is asserted that because of the parent's misconduct toward the child, his consent to the adoption is not required. " 'Every intendment should be made in such case in favor of the parent's claim; and where the statute is open to construction and interpretation, it should be construed in support of the parent's natural rights.' 1 Am.Jur. pp. 626, 627." Stinson v. Rasco, 316 S.W.2d 900, 905 (Tex. Civ.App.1958, no writ). Gilley v. Anthony, 404 S.W.2d 60, 63 (Tex.Civ.App.1966, no writ). For a strict construction of the abandonment provision of Article 46a, § 6, see Hendricks v. Curry, 401 S.W.2d 796 (Tex.Sup.1966), where we held, in effect, that a mother, who arranged to get a good home for her child, was not guilty of "abandoning" the child, and that she could properly withdraw her consent prior to the adoption.

■ As above indicated, when the petitioner found herself financially unable to care for the children, she arranged for Mrs. Heard to take care of them. There is no evidence that the petitioner intended to do anything other than to provide a temporary home for the children. It developed that she provided a home far better for them than that which she was financially able to provide. In doing this, the petitioner was actually caring for the children in the best way she knew how. We cannot agree with the argument that where the parent allows others to support the child, the question of adoption without consent is to be resolved on the basis of the future welfare of the child. Where arrangements are made, as here, the parent has not abdicated his parental status or forfeited his right to withhold his consent to the adoption. We are satisfied that our interpretation of Article 46a, *supra,* conforms to the true intent and purpose of the Legislature in the enactment of the statute.

The judgment of the Court of Civil Appeals is affirmed.

CALVERT, C. J., and WALKER and HAMILTON, JJ., concur in the result.

REAVLEY, J., in which GREENHILL and STEAKLEY, JJ., join.

REAVLEY, Justice (Dissenting).

The question before us is not the wisdom of the Legislature in writing Article 46a, Sec. 6(a), V.C.S., as it did, nor is our question the wisdom of the trial court in deciding that the welfare of the children would be best served by granting the adoption as it did.

Our question is whether this mother, Joan Bauman, has failed to contribute to the support of her children so that her written consent is no longer a necessary prerequisite, under the statute, to their adoption by another.

It is established that the mother has failed to contribute directly to their support, commensurate with her financial ability, for more than two years. But the court holds that by making arrangements for the children, the mother is credited with the contribution of Mr. and Mrs. Heard and excused from any expenditure of her own. She may be morally excused. The children may have been better off where they were. All this would bear on whether the adoption should be permitted. In my view, it does not bear on whether the mother's written consent is necessary.

The statute makes two separate exceptions to the general rule that natural parents must consent. One exception is abandonment or desertion; the other is failure

to support for a period of two years. "In either event," the statute says, "it shall not be necessary to obtain the written consent." If the parent fails to support the child for two years, her written consent is not needed, even though the arrangement she makes for the child be the antithesis of neglect or desertion.

As I read the statute, while a parent may be fully justified in placing a child with doting grandparents or benevolent millionaires, if the parent allows those others to support the child for over two years and if it should then appear that the welfare of the child would be best served by their adoption, the parent cannot block the adoption by refusing written consent. This provision of the Legislature seems reasonable and, in any event, I think it should be enforced by the courts.

I would affirm the judgment of the trial court.

GREENHILL and STEAKLEY, JJ., join in this dissent.