Nanci Adams HOLLEY, Petitioner,

v.

David E. ADAMS, Respondent.

No. B–5880.

Supreme Court of Texas.

Dec. 1, 1976.

Orr & Davis, Stephen M. Orr, Austin, for petitioner.

Rogan B. Giles, Austin, for respondent.

SAM D. JOHNSON, Justice.

David Adams instituted this suit for termination of the parent-child relationship between his former wife, Nanci Adams Holley, and their son. The trial court ordered termination under Section 15.02 of the Texas Family Code Annotated [1] on the grounds

---

"A petition requesting termination of the parent-child relationship with respect to a parent

that Nanci Holley had failed to support her child [Section 15.02(1)(E)], that her conduct endangered the emotional well-being of the child [Section 15.02(1)(D)], and that the termination of the parent-child relationship was in the best interest of the child [Section 15.02(2)]. The court of civil appeals affirmed. 532 S.W.2d 694. We reverse and render judgment denying termination of the parent-child relationship.

David and Nanci Holley were married in 1965. The only child of their marriage, David Christopher, was born the following year. The couple separated in 1968 and subsequently Nanci Holley filed a suit for divorce which was granted in 1969. During the pendency of the divorce action Nanci Holley voluntarily delivered the child to his father in Austin, Texas where he has remained at all times pertinent to this action.

Nanci Holley did not object to or contest the divorce decree awarding custody of the child to David Adams. The court decree did not require Nanci to pay child support. The court order did, however, designate David Adams as managing conservator and he has continuously retained custody and control of his son since Nanci Holley voluntarily delivered the child to him.

David married his present wife, Sharon, in 1970. The trial court found that David Christopher enjoyed a happy relationship with his father and stepmother. His health was good, he attended school regularly, made good grades, and engaged in athletic activities.

Shortly after the divorce Nanci Holley was arrested and jailed for a traffic offense. She was also committed to the Austin State Hospital by her mother during June and July of 1969 for treatment of mental illness which Nanci described as a depressive condition caused by the divorce. In August 1969 she left Austin, Texas where her husband and child resided. She traveled in the company of three men and made what the court of civil appeals termed a "rootless trek to the western states." By the end of that month she had settled in Seattle, Washington where she has remained.

Nanci Holley remarried in 1970 and one child, a daughter, was born of this second union. This marriage ended in divorce in 1973 and Nanci Holley has retained custody of her daughter. During 1973 Nanci declared bankruptcy and in March 1974 she married her present husband, Ricky Holley, who was a student at the University of Washington.

After leaving Austin in 1969 Nanci Holley returned there to visit her son, David Christopher, on three occasions between 1971 and 1974. With respect to her relationship with and support of her son, Nanci Holley testified to the following: she often contacted him through her mother by numerous letters and telephone calls; there exists a loving parent-child relationship between them; the termination of that relationship would not be in the best interest of the child; her three offers to pay her son's air fare to and from Seattle were refused; between 1970 and 1975 she sent a total of approximately $100 in cash to her son or to David and Sharon Adams for his use and benefit; she maintained a health insurance policy covering him; and she sent various gifts and toys to her son. The trial court found that at least one of her gift packages was returned to her unopened. As to Nanci's financial situation between 1970 and 1975, the trial court found that: (1) for two years following her remarriage in 1970 she was a housewife without outside employment; (2) in 1972 she obtained employment as a program adviser at the University of Washington, which position she has contin-

---

who is not the petitioner may be granted if the court finds that:

"(1) the parent has:

. . . . .

"(D) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; or

"(E) failed to support the child in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition;

". . . and

"(2) termination is in the best interest of the child."

ued to hold; (3) she earned a gross income in excess of $500 per month from this employment; (4) she declared voluntary bankruptcy in 1973; (5) her marriage to Ricky Holley has not resulted in any children; (6) Ricky Holley received Veterans Administration education benefits in excess of $300 per month and worked part-time; (7) his tuition averaged $125 per month; and (8) $117 per month was deducted from Nanci's salary to repay loans. Nanci testified that she had not received the child support payments her second husband was ordered to make.

David Adams instituted the instant suit for termination of the parent-child relationship between his former wife, Nanci Adams Holley, and their son, asserting as the only grounds therefor that Nanci Holley had "failed to support the child in accordance with her ability during a period of one year ending within six months of the date of filing of the petition, and she [had] emotionally and actually abandoned the child," and that termination "would be in the best interest of [the] child."

The court appointed a guardian *ad litem* to represent the child, David Christopher, and ordered the guardian *ad litem* to investigate the circumstances and submit a written report to the court. Such report was submitted and is part of the record before this court.

David testified that he brought this suit for termination because if he should die it would be better for his son to be raised by Sharon Adams rather than by Nanci Holley. In describing the relationship between Nanci and David Christopher, David Adams testified as follows:

"Q . . . do you feel that it's in the best interest of Christopher that he not ever see his natural mother again?

"A No, no, sir, not—

"Q All right, sir. You feel that a—What is he now, nine years old, I believe—

"A Yes, sir.

"Q —last February?

"A Yes, sir.

"Q So—All right. So don't you agree with me, sir, that a young man of this age should—who—who has known his

mother and who has visited with her in—and who has formed some affection for his mother should be allowed to continue seeing his mother?

"A Yes, but I—I believe the way—the child is happy the way he is and—

"Q I'm sorry. I didn't—

"A I do believe the child is happy the way he is. As far as—Yes. He enjoys going over to see Nanci whenever she comes to town because he gets gifts and, you know, lots of love and care which, you know, he gets in the home too, but he gets it every day when he only gets it one—once a year or whenever she comes to town.

"Q But you think he ought to continue to see Nanci, do you not?

"A Whenever she comes to town, yes."

In its "Conclusions of Law" the trial court found that:

1. ". . . [Nanci Adams Holley] has failed to support the child in accordance with her ability during a period of one year ending within six months of the date of filing of the petition, within the meaning of Article 15.02(1)(E) of the Texas Family Code";

2. "By her conduct and virtual abandonment of the minor child, David Christopher Adams, for a period of six years, commencing some three to four months prior to her divorce from David E. Adams, Nanci Adams Holley has engaged in conduct which endangers the emotional well-being of the child within the meaning of Article 15.02(1)(E) of the Texas Family Code"; and

3. "Termination of the parent-child relationship between 'the mother, Nanci Adams Holley, and the child, David Christopher Adams, is in the best interest of the minor child, David Christopher Adams . . .."

The trial court decree ordered termination of the parent-child relationship. Additionally, it appointed David Adams managing conservator of his son. The court of civil appeals affirmed, holding that there was sufficient evidence to sustain the trial

court's finding that Nanci Holley failed to support her son in keeping with her ability during a period of one year prior to the filing of this suit for termination [Section 15.02(1)(E)], and that termination of the parent-child relationship was in the best interest of the child. Having found evidence to support one of the provisions of Section 15.02(1) of the Family Code, namely, failure to support [Section 15.02(1)(E)], the court of civil appeals declined to consider the trial court's alternative finding that Nanci Holley had engaged in conduct which endangered the emotional well-being of her son [Section 15.02(1)(D)]. The only issue before this court is the correctness of the termination order. There is no challenge of the appointment of David Adams as managing conservator.

■ As this case involves the right of the child to the benefit of the home and environment which will probably best promote its interest and the right of the parent to surround the child with proper influences, *Herrera v. Herrera,* 409 S.W.2d 395 (Tex. 1966), *Legate v. Legate,* 87 Tex. 248, 28 S.W. 281 (1894), and as *Wiley v. Spratlan,* 543 S.W.2d 349 (Tex.1976), recognized the constitutional dimensions of these rights, this case must be strictly scrutinized.

### TERMINATION MAY NOT BE BASED SOLELY ON DETERMINATION OF BEST INTEREST UNDER SECTION 15.02

■ Under Section 15.02 termination of a parent-child relationship may not be based solely upon what the trial court determines to be the best interest of the child. In *Wiley v. Spratlan, supra,* this court wrote:

"Involuntary termination of parental rights rests upon Section 15.02. Subdivision (1) of that Section lists several acts or omissions, one or more of which must be proved in a termination case. The list may not be an exclusive one, but so far as this case is concerned, the Welfare Unit relied only upon Section 15.02(1)(E). Subdivision (2) of the same Section requires proof of a second element, that the termination is in the best interest of the child. *Both elements must be established* and the requirements of Subdivision (1) are not excused because a court may be of the opinion that Subdivision (2) has been proved." 543 S.W.2d 349 at 351. [Emphasis added.]

### CONDUCT WHICH ENDANGERS EMOTIONAL WELL–BEING

In affirming the trial court's decree terminating the parent-child relationship the court of civil appeals did not rely upon the trial court's finding that Nanci Holley's conduct endangered the emotional well-being of her child [Section 15.02(1)(D)]. Although it is not clear that Section 15.-02(1)(D) was properly pleaded by the recitation in the petition that Nanci Holley "emotionally and actually abandoned the child," it does not appear to be an issue between the parties before the court and this court will, for the purposes of this case, treat it as properly pleaded.

Nanci Holley contends that there is no evidence to support the trial court's finding that her conduct endangered the emotional well-being of her child [Section 15.02(1)(D)]. With respect to this contention, this court in reviewing the record can only consider the evidence and the inferences tending to support the finding of the trial court and must disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965).

■ We hold that there was *no evidence* to support the finding that Nanci Holley, by her conduct, endangered the emotional well-being of her child. The trial court's finding was apparently based in part upon the fact that she visited the child only three times during the five and one-half year period prior to the trial of this case. There was no evidence of any nature that the infrequency of the contacts endangered the child's emotional well-being in any way. Similarly, there was no evidence that Nanci's visits with her son endangered his emotional well-being in any way.

The trial court also may have based its conclusion that Nanci Holley endangered

the emotional well-being of her child upon the conduct previously recited that appeared to cast doubt on her competency as a parent: her arrest in 1969 for a traffic offense; her commitment to the Austin State Hospital by her mother for less than two months; her conduct while traveling to Seattle; her second divorce; and her voluntary declaration of bankruptcy. Again, however, there was no evidence of any nature that David Christopher's emotional well-being was endangered by this conduct in any way.

The foregoing is not to be understood as speaking to the quality of the testimony which might be required to establish that the emotional well-being of a child has been endangered. The instant record is merely devoid of any testimony or evidence of any nature which bears upon the bringing into danger or peril the emotional well-being of the child.

## FAILURE TO SUPPORT

■ Both the trial court and the court of civil appeals found that Nanci failed to support her son within the meaning of Section 15.02(1)(E). There is an adequate basis in the record to sustain the finding of the courts below that Nanci Holley failed to support her child in accordance with her ability during a period of one year ending within six months of the date of the filing of this petition.

## THE FACTOR OF EXCUSE

Nanci Holley contends, however, that Section 15.02(1)(E) is rendered inapplicable where a parent's duty of support has been excused, and that her duty of support was excused in the instant case.

An analogous contention was before this court in the context of determining whether the consent of a parent was a necessary prerequisite to the adoption of his child under Article 46a(6)(a), Texas Revised Civil Statutes Annotated,[2] *Heard v. Bauman,* 443 S.W.2d 715 (Tex.1969). That statute pro-vided that the consent of a parent to adoption of his child was not necessary where "such parent or parents shall not have contributed substantially to the support of such child during such period of two (2) years commensurate with his financial ability."

■ However the statutory scheme which was before this court in *Heard v. Bauman, supra,* is significantly different from Section 15.02 of the Texas Family Code and thus the case is not necessarily controlling. As noted in *Wiley v. Spratlan, supra,* the focus of the current termination proceeding is twofold; first, on the acts or omissions of the parent *and,* second, upon the best interest of the child. The emphasis of Article 46a(6)(a) was on whether the conduct of the parent justifies the waiver of the requirement that the parent consent to an adoption. This change demonstrates the intent of the Legislature to move from the concept that the parent cannot block the severance of the parent-child relationship through adoption when the parent has engaged in unexcused blameworthy conduct, to the idea that the parent cannot prevent termination (1) when there exist acts or omissions by the parent which may indicate that the existing parent-child relationship is not a proper one, *and* (2) when termination is indeed in the best interest of the child. The interpretation of Section 15.02 which will best fulfill the intent of the Legislature is that any "excuse" for the acts or omissions of the parent can be considered by the trial court only as one of the factors in determining the best interest of the child.

## BEST INTEREST OF THE CHILD

Nanci Holley next argues that there is no evidence that termination of the parent-child relationship was in the best interest of David Christopher. An extended number of factors have been considered by the courts in ascertaining the best interest of the child. Included among these are the

---

**2.** Section 15.02(1)(E) was derived from Article 46a(6)(a) which was repealed effective January 1, 1974 upon the enactment of the new Family Code.

following: (A) the desires of the child;[3] (B) the emotional and physical needs of the child now and in the future;[4] (C) the emotional and physical danger to the child now and in the future;[5] (D) the parental abilities of the individuals seeking custody;[6] (E) the programs available to assist these individuals to promote the best interest of the child;[7] (F) the plans for the child by these individuals or by the agency seeking custody;[8] (G) the stability of the home or proposed placement;[9] (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.[10] This listing is by no means exhaustive, but does indicate a number of considerations which either have been or would appear to be pertinent. Only a limited number of factors listed above appear from the record to have been presented here.

## ACTS OR OMISSIONS

OF THE PARENT: As stated earlier, the record does support the finding of the trial court and the court of civil appeals that Nanci failed to support her child in accordance with her ability and this failure to support is one of the factors that is to be considered in ascertaining the best interest of the child.

## EXCUSE OF ACTS OR

OMISSIONS: ▆ However, as previously noted, any excuse for this failure to support is to be considered under best interest. A comparison of the facts of this case to the circumstances of *Heard v. Bauman, supra,* leads to the conclusion that the failure to support was excused. In the instant

case David Adams testified that Nanci Holley voluntarily agreed to give him custody of the child during the course of the divorce proceedings in order to assure that the child would be provided adequate financial support. Nanci Holley was never ordered to make support payments. It was undisputed that the child had been properly cared for while in his father's custody and that David Adams and his wife never sought or wanted any financial support for the child from Nanci Holley. Therefore, Nanci Holley's duty to support her child was excused and the fact that the failure to support is excused is one of the factors to be considered in ascertaining the best interest of the child.

## EMOTIONAL NEEDS OF

THE CHILD: With respect to the emotional needs of the child, the previously noted testimony of both Nanci Holley and David Adams indicates that there does exist an emotional relationship between the child and his mother, and also an emotional relationship between the child and his maternal grandmother, and that these relationships should continue. Furthermore, the evidence demonstrates that there is an emotional relationship between the child and his father and stepmother.

Only two reasons were given by David Adams for termination; first, that it was his desire to adopt his wife's child at the same time his wife adopted his child and, second, that he was fearful of what would happen if he should die and the child's mother should take him.

Particularly compelling is the direct testimony on the best interest of the child.

3. *See Herrera v. Herrera, supra;* Tex. Family Code Ann. § 14.07(a).

4. *See Herrera v. Herrera, supra; Mumma v. Aguirre,* 364 S.W.2d 220, 222 (Tex.1963); *Porter v. Porter,* 371 S.W.2d 607 (Tex.Civ.App.— Eastland 1963, writ ref'd n. r. e.).

5. *See Herrera v. Herrera, supra; Porter v. Porter, supra.*

6. *See Mumma v. Aguirre, supra; Porter v. Porter, supra;* Tex. Family Code Ann. § 14.07(b).

7. *See* Tex. Family Code Ann. § 14.07(b).

8. *See Mumma v. Aguirre, supra;* Tex. Family Code Ann. § 14.07(b).

9. *See Mumma v. Aguirre, supra;* Tex. Family Code Ann. § 14.07(b).

10. *See Heard v. Bauman, supra.*

There is *no* testimony that the child's best interest would be served by termination of the child's relationship with his mother. The investigator's report gives no justification for termination and makes no suggestion that it would be in the child's best interest. On the other hand, the testimony of David Adams, the individual seeking termination here, clearly states that it would not be in the best interest of the child that he never see his mother again; that the best interest of the child would be served by continuing to see his mother.

 A review of the factors presented in the record reveals only evidence that indicates that termination is not in the best interest of the child. There is no evidence that termination of the parent-child relationship is in the best interest of the child, David Christopher.

The judgments of the trial court and the court of civil appeals are reversed and judgment is hereby rendered denying termination of said parent-child relationship.

---

1. Section 15.02, Texas Family Code Annotated, originally enacted in 1973 was amended effective September 1, 1975. The references herein to Section 15.02 pertain to the statute enacted in 1973. Section 15.02 provided in part:

"A petition requesting termination of the parent-child relationship with respect to a parent