In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-15-00030-CV**

_____

**IN THE INTEREST OF F.E. III**

==========================================================

**On Appeal from the 279th District Court**
**Jefferson County, Texas**
**Trial Cause No. F-220,492**

==========================================================

**MEMORANDUM OPINION**

This is a parental-rights termination case. Following a bench trial, the trial court terminated Mother's and Father's respective parent-child relationships with F.E. III, their two-year-old son.[1] By clear and convincing evidence, the trial court found that statutory grounds existed to terminate their relationships. The trial court also found that terminating their relationships with F.E. III would be in his best interest. *See* Tex. Fam. Code Ann. §§ 161.001(1)(D), (E), (O), (P), (Q), 161.001(2)

---

[1]To protect the identity of the parties, we identify F.E. III by using his initials, and we identify his parents by referring to them as Mother and Father. *See* Tex. R. App. P. 9.8. Several months before the trial, Mother had a daughter, L.M.; Mother's parent-child relationship with L.M. is not at issue in this proceeding.

1

(West 2014). Father did not appeal from the order terminating his rights. However, Mother, in five issues, appeals from the trial court's order terminating her parental relationship with F.E. III. In her first four issues, Mother challenges the legal and factual sufficiency of the evidence supporting the four statutory grounds on which the court based its decision to terminate her rights. In her fifth issue, Mother challenges the legal and factual sufficiency of the evidence supporting the trial court's best-interest finding.

We overrule Mother's first issue, as the record contains legally and factually sufficient evidence to support the trial court's order terminating Mother's rights under section 161.001(1)(O) of the Texas Family Code. Tex. Fam. Code Ann. § 161.001(1)(O). We also overrule Mother's fifth issue, as the record contains legally and factually sufficient evidence to support the trial court's best-interest finding. Because resolving issues two through four would not alter our conclusion that the order terminating Mother's rights should be affirmed, we need not reach Mother's other three issues. *See* Tex. R. App. P. 47.1 (requiring the courts hearing appeals to issue written opinions that are as brief as practicable but that address all issues necessary to a final disposition of the case being appealed).

## Standard of Review

In reviewing a legal sufficiency challenge to an order terminating a parent's rights to custody of a child, the evidence admitted during the trial is reviewed "in

the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In reviewing a factual sufficiency challenge to such orders, the standard of review requires that an appeals court give "due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.* Under a factual sufficiency standard, a standard that remains highly deferential to the factfinder's role in evaluating and weighing the evidence, the factfinder's findings will be deemed to be sufficient unless the evidence that could not have been credited in favor of the finding is so significant that the factfinder could not have reasonably formed a firm belief or conviction that the challenged finding was true. *See id.*

Failure to Comply with Court Order

In issue one, Mother challenges the trial court's finding that she failed to comply with the terms of a court order establishing what she was required to do to have her child returned to her care. *See* Tex. Fam. Code Ann. § 161.001(1)(O). With respect to this issue, we note that Mother does not argue that the State failed to establish that F.E. III was not in the Department's custody for at least nine months following his removal, that the State failed to show that F.E. III had been removed from her care due to abuse or neglect, or that the State failed to show that

3

she had not successfully completed a rehabilitation program, as required by one of the trial court's orders. *See id.*

The testimony at the trial established that F.E. III was born in 2012. When F.E. III was approximately 15 months of age, Mother voluntarily placed F.E. III in the custody of her mother at the Department's request due to its concern over her use of controlled substances.

In March 2014, the Department filed suit alleging that there was an immediate danger to F.E. III's health or safety, and it requested that the trial court allow it to immediately take F.E. III into its possession. The trial court granted the emergency request for removal, naming the Department as F.E. III's temporary-sole-managing conservator. Approximately one week after the trial court authorized F.E. III's emergency removal, the trial court conducted an adversarial hearing at which Mother appeared; at the conclusion of the hearing, the trial court rendered an order establishing the actions that Mother was required to take to obtain custody of F.E. III. The order required that Mother comply with "each requirement set out in the Department's original, or any amended, service plan during the pendency of this suit."

Subsequently, Mother signed a Family Service Plan that, among other things, required Mother to successfully complete an inpatient or an outpatient rehabilitation program to address her use of drugs. Mother's use of drugs and her

failure to successfully complete a drug rehabilitation program before the trial were undisputed during the trial. Mother testified that she began using marijuana when she was eleven years old, and that she had used marijuana off and on for approximately ten years. When the Department became concerned about Mother's ability to care for F.E. III due to her use of drugs, she enrolled in three drug treatment programs; however, Mother admitted that she failed to complete any of them.

The record also reflects that Mother continued to use marijuana and phencyclidine (PCP)[2] after the Department became concerned about her use of these drugs. According to Mother, she began using PCP approximately four months after F.E. III was born. After F.E. III was removed from Mother's care, she tested positive on several occasions for using marijuana and PCP. The testimony before the trial court indicates that before F.E. III was born, Mother exposed him to marijuana. Before Mother's daughter was born, Mother exposed her to PCP. Finally, Mother admitted during the trial that she had used PCP and marijuana just two or three weeks before the trial.

---

[2]Phencyclidine is a penalty one drug under section 481.102(8) of the Texas Health and Safety Code. Tex. Health & Safety Code Ann. § 481.102(8) (West 2010). The witnesses testifying at trial referred to the drug as PCP. *See Bessard v. State*, No. 14-14-00348-CR, 2015 WL 1262488, *1 (Tex. App.—Houston [14th Dist.] Mar. 17, 2015, pet. filed) (opinion subject to revision or withdrawal) (noting that phencyclidine is commonly referred to as PCP).

When the disputed issues are tried to the court, the trial court, as factfinder, decides the weight and credibility to give to the testimony of the witnesses. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). In resolving any factual disputes that exist in the testimony, the factfinder may believe one witness and disbelieve others, and may resolve any inconsistencies in the testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). Thus, if the trier-of-fact could reasonably believe the testimony of one witness or disbelieve the testimony of another witness, the appellate court "cannot impose [its] own opinions to the contrary." *City of Keller*, 168 S.W.3d at 819.

In her argument, Mother emphasizes the evidence showing that she complied with various requirements in the Family Service Plan; she omits any mention of the trial court's requirement that she complete a rehabilitation program. However, the question before the trial court was not whether Mother could comply with all of the requirements of the order if given another chance, nor was the issue whether Mother substantially complied with the trial court's order. *See In re T.S.*, No. 09-13-00463-CV, 2014 WL 1400777, *5 (Tex. App.—Beaumont Apr. 10, 2014, no pet.); *In re I.G.*, 383 S.W.3d 763, 771 (Tex. App.—Amarillo 2012, no pet.); *In re J.S.*, 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.). Mother's claim of substantial compliance and her testimony that she would complete a drug rehabilitation program if given another chance are relevant only to the trial court's

best interest determination. *See In re M.C.G.*, 329 S.W.3d 674, 675-76 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (supp. op. on reh'g).

As the factfinder, the trial court had the responsibility of weighing the evidence to determine whether Mother complied with the terms of its order. While Mother and F.E. III's grandmother testified that if given another chance that Mother could complete a drug rehabilitation program, the record contains clear and convincing evidence showing that Mother had not done so as of the date of the trial. In this case, Mother never disputed that she had not successfully completed the rehabilitation plan as required by the court's order. Since the trial court's finding that Mother failed to comply with subsection 161.001(1)(O) of the Texas Family Code is undisputed, and is a finding that is supported by the evidence admitted during the trial, Mother's claim that no evidence or insufficient evidence supports the finding is without merit. *See* Tex. Fam. Code Ann. § 161.001(1)(O).[3] We overrule issue one.

## Best Interest

In issue five, Mother argues that the evidence is legally and factually insufficient to support the trial court's best interest finding. In determining what is

---

[3]A single predicate finding under section 161.001(1) of the Texas Family Code will support a judgment of termination when there is also a finding that termination is in the best interest of the child under section 161.001(2). *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

in a child's best interest, there is a "strong presumption that the best interest of a child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *see* Tex. Fam. Code Ann. § 153.131 (West 2014). Additionally, courts also presume that a prompt and permanent placement of a child in a safe environment is in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West 2014). In reviewing whether the trial court's decision to terminate Mother's parental rights is supported by sufficient evidence to show the termination is in F.E. III's best interest, we consider the nine non-exhaustive factors identified in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).[4] *See* Tex. Fam. Code Ann. § 263.307(b) (West 2014).

---

[4]In *Holley,* the Texas Supreme Court applied the following factors to determine whether terminating the parent's relationship was in the child's best interest:

- the child's desires;
- the child's emotional and physical needs, now and in the future;
- the emotional and physical danger to the child, now and in the future;
- the parenting abilities of the parties seeking custody;
- the programs available to assist the parties seeking custody;
- the plans for the child by the parties seeking custody;
- the stability of the home or the proposed placement;
- the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and
- any excuse for the parent's acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

When the termination hearing occurred, F.E. III was two years old. The evidence before the trial court shows that Mother had been using marijuana for approximately ten years, and that she had been using PCP for approximately two years. Between the date the Department became involved in F.E. III's care and the date of the trial, Mother was tested on several occasions and the positive tests allowed the trial court to conclude that Mother had not discontinued her use of controlled substances. The conclusion that Mother is still using drugs is further reinforced by Mother's testimony that she last used marijuana and PCP approximately three weeks before the trial. Based on Mother's history of drug use, her inability to complete a drug rehabilitation program, and the testing, the trial court could reasonably conclude that Mother would not be able to discontinue her use of controlled substances. Based on Mother's history that she left F.E. III in the care of other family members when using drugs, the trial court's conclusion that Mother could not adequately care for F.E. III when using drugs is reasonable. From the evidence, the trial court could reasonably infer that Mother's inability to discontinue her drug use posed a significant problem that impairs her ability to fulfill F.E. III's physical and emotional needs.

Nevertheless, Mother's inability to avoid these two controlled substances was not shown to have affected her ability to obtain and maintain a home. The evidence shows that Mother provided housing for F.E. III. Additionally, there was

no evidence showing that Mother had ever been violent toward F.E. III. Instead, the evidence shows that Mother loves F.E. III, and that Mother has the ability to function adequately as a parent except when using drugs.

With respect to the programs available to the parties, the evidence shows that Mother failed multiple times in her efforts to complete a drug rehabilitation program. There was also evidence showing that with government assistance, Mother could provide a place for her son to live.

With the exception of the evidence that relates to Mother's use of controlled substances, the record contains scant evidence that Mother's relationship with F.E. III was improper. However, the record does indicate that Mother took F.E. III from his grandmother's care in violation of the voluntary safety plan that was established by the Department. Mother and F.E. III's grandmother attempted to excuse Mother's conduct for taking the child from the grandmother's care during the trial. F.E. III's grandmother testified that Mother possibly told her she was taking her son before she actually left with him, although she also stated she could not remember if Mother asked to take him or not. Mother testified that she was unaware that her agreement with the Department required F.E. III to be supervised at all times only by certain people, and she explained that another adult was with her when she took her son from the grandmother's home. According to Mother, she was being supervised by her boyfriend at the time she took F.E. III from the

grandmother's home. However, the trial court was not required to accept the Mother's excuses for taking F.E. III from the grandmother's home. The trial court could have considered Mother's act, in the face of her excuse, to have been improper in light of her voluntary agreement to have her family members supervise F.E. III while she was in his presence.

There was also testimony at the trial relevant to the goals the parties had for F.E. III. The testimony by the Department's employee during the trial indicates that the Department's goal was to find a relative who would adopt F.E. III. There was evidence indicating that the Department had placed F.E. III in the home of his aunt following F.E. III's emergency removal. Mother, who has a good relationship with her aunt, is able to visit him when she is not using drugs. According to the employee of the Department, F.E. III is doing well in his aunt's home. According to Mother's testimony, F.E. III and her daughter are both living with her aunt, and her children were being "well taken care of." While Mother thought that F.E. III's interest would best be served if allowed to remain with her because she loves him, the trial court, as the finder of fact, was entitled to give little weight to her testimony.

With respect to Mother's parenting ability, Mother's testimony indicates that she attended a parenting class after F.E. III was removed from her care. Mother testified that she learned from the class. Nevertheless, the problem with Mother's

11

parenting, based on the evidence admitted at trial, relates principally to Mother's use of controlled substances and her inability to discontinue using them. A parent's drug-related conduct may be given significant weight by the factfinder in deciding whether terminating a parent's rights is in the child's best interest. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). Therefore, the trial court could reasonably discount Mother's evidence about her parenting ability in deciding whether terminating her rights would be in F.E. III's best interest, as the evidence regarding her use of drugs precluded her ability to responsibly parent F.E. III.

Based on all of the evidence before the trial court, the trial court could reasonably have formed a firm belief or conviction that Mother's use of controlled substances would continue to the extent that they would jeopardize F.E. III's well-being. Its conclusion that terminating Mother's parental rights would be in F.E. III's best interest is supported by clear and convincing evidence in light of the evidence admitted at the trial. *See In re J.F.C.*, 96 S.W.3d at 266; *see also Toliver v. Tex. Dep't of Family and Protective Servs.*, 217 S.W.3d 85, 102 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Having considered the *Holley* factors, and the evidence the trial court had before it, we conclude the best interest finding is supported by legally and factually

sufficient evidence. We overrule issue five, and we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on April 6, 2015
Opinion Delivered June 25, 2015

Before McKeithen, C.J., Horton and Johnson, JJ.