

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00406-CV

In the Interest of **I.G.** and R.C., Jr., Children

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-PA-01929
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:         Karen Angelini, Justice
                Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  November 25, 2015

AFFIRMED

V.C. and R.C.[1] argue the evidence is legally and factually insufficient to support the trial court's order terminating their parental rights to their children, I.G. and R.C., Jr. We affirm.

### BACKGROUND

On August 13, 2014, the Department filed a petition to terminate the parental rights of V.C. (hereinafter, "Mother") and R.C. (hereinafter, "Father"). On the same day, the Department of Family and Protective Services obtained an order authorizing the emergency removal of I.G. and R.C. from Mother and Father's home. At the time, I.G. was eight, and R.C. was four.

---

[1]To protect the identity of the children, we do not use the parties' names. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014); TEX. R. APP. P. 9.8(b)(2).

On September 18, 2014, the trial court held an adversary hearing and ordered Mother and Father to comply with each requirement set out in the Department's service plan. On October 1, 2014, the trial court held a status hearing, approved the Department's service plan, and made it an order of the court. The service plan, which was filed with the trial court clerk, required Mother and Father to (1) complete an approved drug and alcohol assessment and follow all recommendations of substance abuse professionals; (2) provide a certificate of completion from an approved parenting program; (3) provide a certificate of completion from the empowerment classes held at the Casey Social Services, San Antonio, Texas; (4) demonstrate the ability to maintain an appropriate, safe, stable, and hazard free home environment; (5) complete a psycho-social assessment and follow all recommendations from mental health professionals; (6) participate in individual, couples, and family counseling as recommended with an approved therapist; (7) participate in parent-child visitation; (8) participate in random drug testing as specified by the Department; and (9) stay in contact with a Department caseworker, providing addresses and phone numbers.

On June 11, 2015, the case was tried to the court. The trial evidence showed the children were removed from their parents' home based on allegations that Mother and Father were using illegal drugs. Additionally, the family's home had no electricity and no refrigerator, and the youngest child, R.C., had extensive tooth decay. In November 2014, after the service plan had been filed with the court, Mother admitted to a Department legal supervisor, Richard Garza, that there had been heroin and methamphetamine use. Because of the severity of the drug use, Garza told Mother to go directly to Lifetime Recovery for inpatient drug treatment, and provided her with contact information for the program. Garza also told Father to seek drug treatment from Lifetime Recovery. Neither Mother nor Father contacted Lifetime Recovery. Two months later,

Garza referred Mother to another drug treatment program, Alpha Home. Mother did not contact that program either.

Thereafter, Mother and Father participated in supervised visits with the children and drug testing. Mother and Father reported to all drug tests as requested by the Department. On one occasion, drug tests were administered in the middle of a visit with the children. These tests showed that Mother and Father were positive for methamphetamines. Because of the positive drug test results, the visit was immediately ended.

A Department caseworker, Wesley Hibbits, testified that the Department's main concern in this case was the parents' drug use. There was no indication that Mother or Father were dealing with their drug problems. Neither parent had completed a drug assessment or participated in any kind of drug treatment. Hibbits was aware that Mother and Father had moved to a new house, but he had not visited the new house. Hibbits explained that it was futile for him to screen the parents' home until they had taken steps to address their drug use. Hibbits stated that Mother and Father had attended only one counseling session with a Department-approved counselor.

Mother testified that she understood the children had been removed from her home because of allegations that she and Father were intravenous drug users. Mother admitted to using heroin twice, methamphetamines three times, and marijuana once while this case was pending. Mother also admitted to using prescription drugs that were not prescribed for her during the same time period. In particular, Mother said she had obtained Klonopin from her adult son. Mother claimed that no one ever told her to obtain a drug assessment. Nevertheless, Mother acknowledged that the Department referred her to Alpha Home, which is a residential drug treatment facility. Mother said that she was homeless when she received the referral to Alpha Home and had nowhere to go; she did not follow up with the Department's referral because she had found a place to stay. Mother also stated that Garza gave her a referral to a counselor.

Mother acknowledged that she had had prior cases with the Department. According to Mother, this was the first time that she was not given a copy of the service plan. However, Mother confirmed that Garza and Hibbits had talked to her about the items on her service plan. Mother said she did complete her parenting classes, and she went to one counseling session with a Department-approved counselor.

During his testimony, Father denied using drugs while the case was pending. Father did not know why he tested positive for methamphetamines during his visit with the children. Father was not aware of any illegal drug use by Mother. Father acknowledged that he had talked to the Department during the pendency of this case, but he claimed he was never told to go to Lifetime Recovery for inpatient drug treatment. Father also said he was not aware of any of the items on his service plan, except for the parenting classes. Father noted that he did complete the parenting classes. Father claimed that the first time he ever saw the service plan was on the day of trial. According to Father, he did all that was requested of him by the Department.

In his testimony, Hibbits confirmed that Mother and Father were never given a copy of the service plan in this case. Hibbits was not the original caseworker on the case, and he did not make the initial visit to Mother and Father's home following the children's removal. Hibbits indicated that if he had performed the initial visit with Mother and Father, he would have printed a copy of the service plan and provided it to them at that time. Hibbits further testified that during a hearing held in January 2015, everyone was made aware that Mother and Father had not been given a copy of the service plan. According to Hibbits, he was unable to provide Mother and Father with a copy of the service plan immediately after the hearing because he did not have his printer with him and he did not have access to the computers at the courthouse. Hibbits stated that he had advised Mother and Father of the services they needed to perform and where they had to go to obtain those services. Hibbits also testified that he had called the service providers to see if Mother and Father

were participating in their services. Hibbits learned that Mother and Father were participating in some of their services; however, he had not received verification from any service provider that Mother or Father had successfully completed any of their services. Hibbits said he had seen a certificate stating that Mother had completed her parenting classes.

The trial court took judicial notice of the service plan, which was filed with the trial court clerk on October 1, 2014.

After hearing all the evidence, the trial court determined that Mother and Father's parental rights should be terminated. In its termination order, the trial court found that Mother (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; (2) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children; and (3) used a controlled substance in a manner that endangered the health or safety of the children and failed to complete a court-ordered substance abuse program. *See* TEX. FAM. CODE ANN. § 161.001(1)(D),(O),(P) (West 2014). The trial court found that Father (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; and (2) failed to comply with the provisions of a court order that specifically established the actions necessary for Father to obtain the return of the children. *See id*. § 161.001(1)(D),(O). The trial court also found that termination of the parent-child relationship, as to each parent, was in the children's best interest. *See id*. § 161.001(2).

On appeal, Mother and Father challenge the sufficiency of the evidence to support the trial court's findings as to each of the grounds under section 161.001(1), and as to best interest of the children.

**APPLICABLE LAW AND STANDARDS OF REVIEW**

Termination of parental rights under section 161.001 of the Texas Family Code requires proof by clear and convincing evidence that the parent committed one of the acts or omissions listed in section 161.001(1)(A)-(T) and that termination is in the child's best interest. *Id.* § 161.001(1),(2). Clear and convincing evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2014). Only one predicate finding under section 161.001(1) is necessary to support a termination order when there is also a finding that termination is in the child's best interest. *In the Interest of A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

In reviewing the legal sufficiency of the evidence in a parental termination case, we consider all of the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a strong belief or conviction that its finding was true. *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* If we conclude that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude the evidence is legally insufficient. *Id.*

In a factual sufficiency review, we give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* We must consider whether disputed evidence is such that a reasonable factfinder could not have resolved that evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

## SECTION 161.001(1)(O)

We begin our analysis by addressing the sufficiency of the evidence to support the trial court's findings that Mother and Father failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the child. Under section 161.001(1)(O), a trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child.

TEX. FAM. CODE ANN. § 161.001(1)(O). The Texas Family Code does not provide for excuses for a failure to comply with the trial court's order under section 161.001(1)(O). *In the Interest of C.R.*, 263 S.W.3d 368, 374 (Tex. App.—Dallas 2008, no pet.). Nor does it consider substantial compliance to be the same as completion of services. *In the Interest of C.S.*, No. 02-14-00386-CV, 2015 WL 1869443, at *10 (Tex. App.—Fort Worth April 23, 2015, no pet.).

The crux of Mother's argument is that the evidence was insufficient to support the trial court's finding under section 161.001(1)(O) because the Department failed to communicate the contents of the service plan, and, thus, hindered her ability to comply with the court's order establishing the actions necessary for her to obtain return of her children. Contrary to Mother's contention, there was evidence that the Department communicated the contents of the service plan to Mother. First, Hibbits testified that he told Mother and Father of the services they needed to perform and where they had to go to obtain those services. Second, Garza testified that he had made Mother aware that services had been established for her. Specifically, Garza testified that when Mother first contacted him in November 2014, he explained the issues in the case to her and

told her where she could find help. Because of the severity of her drug use, Garza recommended that Mother skip the drug assessment and go directly to Lifetime Recovery. Garza gave Mother the phone number so she could make an appointment with Lifetime Recovery. When Mother again contacted Garza in January 2015, and informed him that she was homeless, Garza told Mother to contact Alpha Home for inpatient drug treatment, and Garza provided her with the necessary contact information. Garza further testified that if Mother had contacted Alpha Home as directed, she would have been given a drug assessment as part of the intake process.

Father essentially argues that the evidence was insufficient to support the trial court's finding under section 161.001(1)(O) because he completed the services of which he was made aware, specifically parenting classes and counseling.[2] Texas courts have uniformly held that substantial completion or substantial compliance is not enough to avoid termination under section 161.001(1)(O). *In the Interest of T.T.*, 228 S.W.3d 312, 319-20 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing cases rejecting arguments that substantial compliance is enough to avoid a finding under section 161.001(1)(O)). And, to the extent Father argues that the evidence was insufficient because the Department failed to communicate the contents of his service plan to him, we reject this argument as well. Garza testified that, beginning in November 2014, he had conversations with Mother and Father in which they told him that illegal drug use was still a problem for them. Garza estimated that he had about five conversations with Father. Based on these conversations, Garza referred Father to Lifetime Recovery for drug treatment. Additionally, Hibbits testified that he advised Father of the services he needed to perform, and where he needed

---

[2]Although there was some evidence that Father completed his parenting classes, there was no evidence that he completed counseling. Instead, the evidence showed that Father went to one session with a Department-approved counselor and was "discharged."

to go to obtain these services. Thus, there was evidence that the Department communicated the contents of the service plan to Father.

The record shows the Department filed a service plan with the trial court clerk on October 1, 2014. On the same day, the trial court signed an order that incorporated the service plan, approved it, and made it an order of the court. Among other things, the service plan required Mother and Father to complete an approved drug and alcohol assessment and to follow all recommendations of substance abuse professionals. The undisputed evidence shows Mother and Father failed to do so. Based on this evidence, the trial court could have formed a firm belief or conviction that Mother and Father failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the children. We conclude the evidence was legally and factually sufficient to support the trial court's findings under section 161.001(1)(O).

Having concluded that the evidence was legally and factually sufficient to support the trial court's findings under section 161.001(1)(O), we need not address Mother and Father's complaints that the evidence was insufficient as to the other findings under section 161.001(1). *See A.V.*, 113 S.W.3d at 362 (recognizing that a single predicate finding under section 161.001(1) is sufficient to support termination when there is also a finding that termination is in the child's best interest); TEX. R. APP. P. 47.1 (requiring opinions to address only those issues necessary to final disposition of the appeal).

BEST INTEREST OF THE CHILD

Next, we analyze whether the evidence was legally and factually sufficient to support the trial court's findings that termination of Mother and Father's parental rights was in the best interest of the children. There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *In the Interest of R.R.*, 209 S.W.3d 112, 116 (Tex. 2006).

There is also a presumption that the prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2014). The Texas Family Code lists factors courts should consider in determining whether parents are willing and able to provide the child with a safe environment. *Id*. 263.307(b). The listed factors that are relevant to our analysis include the children's age and vulnerabilities; a history of substance abuse by the children's family; the willingness and ability of the children's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the children's family to effect positive environmental and personal changes within a reasonable period of time; and whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with minimally adequate health and nutritional care. *Id*. § 263.307 (b)(1),(8),(10),(11),(12)(A).

In addition, in evaluating the trial court's best interest findings we may consider the factors articulated in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* In evaluating *Holley* factors, we focus on the best interest of the child, not the best interest of the parents. *Dupree v. Texas Dept. of Prot. and Regulatory Serv.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

There is no requirement that evidence be presented as to each of the *Holley* factors. *In the Interest of C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id*. The same evidence proving acts or omissions under section 161.001(1) of the Texas Family Code may be probative of the child's best interest. *Id*. at 28. In analyzing the best interest of the child, we may consider direct and circumstantial evidence, subjective factors, and the totality of the evidence. *In the Interest of E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

We now consider the above-referenced factors as they apply to this case. At the time of trial, I.G. was ten and R.C. was five. Thus, the children were still quite young and vulnerable. The children were living in a foster home and transitioning to a foster-to-adopt home. No direct evidence was presented concerning the children's desires, but there was some evidence indicating that the children had a bond with their parents. Mother testified that the children were happy to see her and Father during visits and were "distraught" when the visits were over. Mother also testified that she could not live without her children, and her children could not live without her.

When the children were removed from Mother and Father's home, R.C. had extensive tooth decay. Mother acknowledged that this tooth decay caused R.C. pain. Mother offered several excuses for the failure to care for R.C.'s physical needs. Specifically, Mother said that the tooth decay had developed only "within the past six months before [the Department] took [him]," that they could not take R.C. to the dentist because Father had just lost his job, and the children did not qualify for Medicaid because Father had received funds from "early retirement." Additionally, when the children were removed from Mother and Father's home, the family's home had no refrigerator and no electricity. Mother also offered excuses for the family's living conditions.

- 11 -

Mother explained that their home had a generator and had contained a refrigerator until just before the children were removed.

By the time of trial, Mother and Father had moved to a different house. According to Mother, the house was equipped with electricity, running water, and food. Father explained that they were renting the house on a month-to-month basis; they did not have a lease. Mother said the house had three bedrooms; Father said it had two bedrooms. Father testified that he was employed at the same job that he had worked at for the last two years. In addition, Mother testified that she and Father were trying to work things out and were living together "on and off."

Shortly after the children's removal, Mother and Father admitted to a Department employee, Garza, that they were still using illegal drugs. In her trial testimony, Mother admitted that she had used various illegal drugs after the children were removed, including heroin, methamphetamines, and marijuana. Mother also admitted that, on one occasion, she sought and obtained prescription medicines from one of her adult children; the medication was not prescribed for her. Nevertheless, Mother never obtained a drug assessment or followed up on referrals to drug treatment programs. Mother also stated that she had used drugs to help her deal with the pain of losing the children. And, finally, Mother tested positive for methamphetamines during a visit with the children.

Father also tested positive for methamphetamines during a visit with the children. However, in his trial testimony, Father could not explain how or why he tested positive for methamphetamines. Father denied that he had used illegal drugs, and he further stated that he was unaware of any illegal drug use by Mother.

A parent's drug-related conduct is a significant factor to which a factfinder can give great weight in evaluating the best interests of a child. *Dupree*, 907 S.W.2d at 86. A factfinder can form a firm conviction or belief that termination of parental rights is in a child's best interest from facts

showing a parent's frequent and long-term use of drugs. *Toliver v. Texas Dept. of Family and Prot. Serv.*, 217 S.W.3d 85, 102 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Viewed in the light most favorable to the trial court's finding, the evidence showed continuous illegal drug use by Mother and Father. Mother and Father were repeatedly advised that they needed to seek treatment for their drug problems and were referred to programs to assist them. Nevertheless, Mother and Father never went for a drug assessment or sought any assistance with their drug problems. Neither parent successfully completed counseling, which according to the Department, could have aided and supported a drug treatment program. Mother and Father attended one session with a Department-approved counselor, but were immediately discharged. In light of this evidence, the trial court could have concluded that Mother and Father had failed to demonstrate a willingness and ability to accept and complete counseling services, and had failed to demonstrate a willingness to effect personal changes within a reasonable period of time. Finally, Mother and Father were unable to provide minimally adequate health care for their children as demonstrated by their failure to obtain treatment for R.C.'s extensive tooth decay.

We recognize that at trial Father denied that he had used illegal drugs. However, in performing a factual sufficiency review, we must give "due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses." *In the Interest of A.B.*, 437 S.W.3d 498, 503 (Tex. 2014). We are further obligated to give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *J.F.C.*, 96 S.W.3d at 266. Here, there was some evidence that Father continued to use illegal drugs even after the children's removal. We cannot say that, in light of the entire record, "the disputed evidence that a reasonable factfinder could not have credited in favor of [its] finding is so significant that a factfinder could

not reasonably have formed a firm belief or conviction in the truth of its finding" that termination was in the children's best interest. *See A.B.*, 437 S.W.3d at 506; *see also J.F.C.*, 96 S.W.3d at 266.

Considering the direct and circumstantial evidence, subjective factors, and the totality of the evidence, we conclude the trial court could have formed a firm belief or conviction that termination was in the children's best interest. We, therefore, conclude the evidence was legally and factually sufficient to support the trial court's findings as to best interest of the children.

## CONCLUSION

The trial court's termination order is affirmed.

Karen Angelini, Justice