

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-16-00261-CV

In the Interest of **A.A.V.**, Jr. and B.M.V., Children

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2015-PA-01521
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Rebeca C. Martinez, Justice
                Jason Pulliam, Justice

Delivered and Filed:  September 28, 2016

AFFIRMED

D.V. appeals the trial court's judgment terminating her parental rights to her children, A.A.V. and B.M.V. In a single issue, D.V. argues the evidence was legally and factually insufficient to support the trial court's finding that termination was in the children's best interest. We affirm.

### BACKGROUND

D.V. gave birth to twins, A.A.V. and B.M.V. Because both children tested positive for opiates at birth, hospital personnel contacted the Texas Department of Family and Protective Services. The day after the children were born, a Department investigator talked to D.V. who admitted that she had used heroin on a daily basis while she was pregnant with A.A.V. and B.M.V. The Department filed a petition for protection of the children, for conservatorship, and for

termination of the parent-child relationship. When A.A.V. and B.M.V. were discharged from the hospital, they were placed in a foster home. A Department caseworker set up several meetings with D.V., but D.V. failed to attend the meetings.

Eight months after the Department's petition was filed, a trial was held on the Department's termination request. D.V., the caseworker, the children's alleged father, and the investigator testified. After hearing the evidence, the trial court found, by clear and convincing evidence, that D.V. (1) had knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; (2) had engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the children's physical or emotional well-being; (3) had constructively abandoned the children; (4) had used a controlled substance in a manner that endangered the health or safety of the children, and had failed to complete a court-ordered substance abuse treatment program, or after completion of a court-ordered substance abuse treatment program had continued to abuse a controlled substance; and (5) had been the cause of the children being born addicted to alcohol or a controlled substance. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D),(E),(N),(P),(R) (West Supp. 2016). The trial court also found, by clear and convincing evidence, that termination of the parent-child relationship was in the children's best interest. D.V. appealed.[1]

### APPLICABLE LAW AND STANDARDS OF REVIEW

Termination of parental rights under section 161.001 of the Texas Family Code requires proof by clear and convincing evidence that the parent committed one of the acts or omissions listed in section 161.001(1)(A)-(T) and that termination is in the child's best interest. *Id.* § 161.001(1),(2). Clear and convincing evidence means the measure or degree of proof that will

---

[1]The trial court also terminated the parental rights of the children's alleged father, A.V. He did not appeal.

produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2014). Only one predicate finding under section 161.001(1) is necessary to support a termination order when there is also a finding that termination is in the child's best interest. *In the Interest of A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

In reviewing the legal sufficiency of the evidence in a parental termination case, we consider all of the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In the Interest of J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id*. If we conclude that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude the evidence is legally insufficient. *Id*.

In a factual sufficiency review, we give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id*. We must consider whether disputed evidence is such that a reasonable factfinder could not have resolved that evidence in favor of its finding. *Id*. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id*.

## THE TRIAL EVIDENCE

The following evidence was presented at trial.

### *Mother*

D.V. testified that when she was pregnant with A.A.V. and B.M.V. she had a heroin problem. D.V. was aware that A.A.V. and B.M.V. were drug positive when she gave birth to them. D.V. had not seen A.A.V. and B.M.V. since they were born. D.V. acknowledged that she never

tried to contact anyone at the Department to arrange a visit with her children. D.V. also acknowledged that she was aware that she was required to complete services in this case. D.V. said she did not complete any of her services because she was too focused on herself and on being high. Additional reasons D.V. gave for not completing her services were a lack of transportation and her absence from Texas while the case was pending. D.V. acknowledged that she initially lied to the Department about the identity of the children's father. D.V. believed that A.V. was the father of A.A.V. and B.M.V.

At the time of trial, D.V. was in jail and had been there for two months. D.V. had a pending felony drug charge. While in jail, D.V. participated in Narcotics Anonymous and GED classes, attended church services, and signed up for the MATCH program, which assists inmates in visiting their children. D.V. said she is now trying to stay clean and to do what she has to do to be a good mother. D.V. felt her drug problems were behind her.

D.V. had three children with her ex-husband. The children live in Louisiana with their father and D.V. is permitted to visit these children without restrictions. D.V. said it had been two months since she had seen her other children. D.V. considered herself a good parent to these children, and her activities with them were appropriate. D.V. acknowledged that she had not seen A.A.V. and B.M.V. since they were born. D.V. knew A.A.V. and B.M.V. were in foster care and admitted that she had not contacted the Department to try to see A.A.V. and B.M.V.

D.V. also said that she plans to live with A.V.'s aunt after she is released from jail. D.V. did not know if the aunt was married or what she did for a living, but she claimed that the aunt's home was appropriate for A.A.V. and B.M.V. According to D.V., she and the children would be able to stay with A.V.'s aunt for a long time. D.V. believed that A.V. would live with them when he is released from prison. A.V. was in prison for driving while intoxicated. D.V. admitted that A.V. had had a problem with methamphetamines in the past. D.V. said she plans to work when

she is released from jail, either as a housekeeper or a waitress. D.V. said the last time she was employed was six years ago.

Finally, D.V. testified that she spoke to the Department caseworker about her case on three occasions. The caseworker did not provide D.V. with the names of any service providers in Louisiana so she could complete her services there. But the caseworker did visit D.V. at the jail and discussed her service plan with her. D.V. said she loved A.A.V. and B.M.V. and wanted them back. D.V. wanted an opportunity to prove that she is different and that she has changed. D.V. said she does not present a danger to her children.

*Department Caseworker*

The Department caseworker testified that at the beginning of the case she had set up two meetings with D.V. D.V. failed to attend either meeting. Had D.V. showed up for either of the meetings, she would have been given a copy of her service plan. D.V. sent no correspondence to the Department. The caseworker was unable to locate D.V. for many months. About six months after the case was filed, D.V. finally called the caseworker. In a phone conversation, D.V. admitted to the caseworker that she was living in Louisiana and had been doing drugs. D.V. never asked how the children were doing or inquired about their medical needs. The caseworker's concerns about D.V. included her drug history, her lack of stability, her failure to visit the children, and her failure to perform her services.

As for the children, A.A.V. and B.M.V. were nine months old at the time of trial. They have ongoing medical problems because they were born addicted to opiates. Both of the children receive occupational and physical therapy.

The caseworker explained that A.A.V. and B.M.V. were placed in a foster home when they were discharged from the hospital after their birth. A.A.V. and B.M.V. were still in the same foster home. A.A.V. and B.M.V. had bonded with their foster mother. The foster mother tended to the

children's emotional needs, and made sure the children received all of the medical treatment and therapy they required. The foster mother appeared to love A.A.V. and B.M.V. The Department's long term plan was for A.A.V. and B.M.V. to be adopted by their foster mother.

*Alleged Father*

The children's alleged father, A.V., testified that he is currently in prison because of a driving while intoxicated conviction. A.V. said he has the possibility of being released on parole in July 2016. Upon his release from prison, A.V. plans to live at a house owned by his parents. A.V. saw A.A.V. and B.M.V. while they were still in the hospital. A.V. was arrested six months after A.A.V. and B.M.V. were born and had been in prison ever since. A.V. knew the Department had picked A.A.V. and B.M.V. up from the hospital, but he thought that they had been returned to D.V. A.V. had never contacted D.V. to ask her about A.A.V. and B.M.V., nor had he contacted the Department about them.

*Department Investigator*

A Department investigator testified that he had met with D.V. immediately after the children were born. At this meeting, D.V. admitted to daily use of heroin while she was pregnant with A.A.V. and B.M.V. Initially, D.V. denied that A.V. was the father of the children, even though one of the children was named after him. At one point, D.V. claimed the children were the product of a sexual assault. D.V.'s ex-husband was the first person to inform the investigator that A.V. might be the father of A.A.V. and B.M.V.

## BEST INTEREST OF THE CHILDREN

In evaluating a trial court's best interest finding, courts may consider the factors articulated in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of

the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id*. In evaluating the *Holley* factors, we focus on the best interest of the child, not the best interest of the parent. *Dupree v. Texas Dept. of Prot. and Regulatory Serv.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

There is no requirement that evidence be presented as to each of the *Holley* factors. *In the Interest of C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id*. The same evidence proving acts or omissions under section 161.001(1) of the Texas Family Code may be probative of the child's best interest. *Id*. at 28. In analyzing the best interest of the child, we may consider direct and circumstantial evidence, subjective factors, and the totality of the evidence. *In the Interest of E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). In addition, a trier of fact may measure a parent's future conduct by her past conduct and determine whether termination of parental rights is in the child's best interest. *Id*.

We now consider the evidence presented in this case in light of the above-referenced factors. At the time of trial, A.A.V. and B.M.V. were only nine months old, far too young to express their own desires. The children were living in a stable foster home, where they were safe and their emotional and physical needs were being met. The Department's long term plan was for the foster mother to adopt A.A.V. and B.M.V.

D.V. attempted to demonstrate that she could provide A.A.V. and B.M.V. a stable home. D.V. testified that she planned for her and the children to live with A.V.'s aunt. D.V. anticipated that A.V. would live with them as well. But D.V. had never visited the home where A.V.'s aunt lived and did not even know what the aunt did for a living. Furthermore, A.V. testified that he was planning to live elsewhere when he is released from prison.

The evidence showed multiple serious omissions by D.V. First, while pregnant with A.A.V. and B.M.V., D.V. used heroin on a daily basis. Second, after A.A.V. and B.M.V. were placed in foster care, D.V. made no effort to visit the children or to inquire about their well-being. D.V. completely abandoned the children. Third, D.V. did not perform any of the services on her service plan. D.V. did not engage in any drug treatment, complete any parenting classes, attend an appointment with a psychologist, or appear for individual counseling. One of D.V.'s reasons for not completing her service plan was that she was too focused on herself and on being high. Considering the evidence in the light most favorable to the trial court's finding, the trial court could have formed a firm belief or conviction that termination of D.V.'s parental rights was in the children's best interest.

D.V. disputed some of the Department's evidence. D.V. testified that she was a good mother and that she felt her drug problems were now behind her. D.V. also claimed that she had an appropriate relationship with her three other children and she was able to visit with them without restrictions. Furthermore, D.V. indicated that transportation problems and her absence from the state hindered her ability to visit A.A.V. and B.M.V. and her ability to complete her service plan. Nevertheless, in light of the entire record, we cannot say that the disputed evidence that a reasonable factfinder could not have credited in favor of its best interest finding was so significant that the factfinder could not have formed a firm belief or conviction in the truth of its finding. *See Interest of A.B.*, 437 S.W.3d 498, 506 (Tex. 2014); *see also J.F.C.*, 96 S.W.3d at 266.

We conclude the evidence was legally and factually sufficient to support the trial court's finding that termination of D.V.'s parental rights was in A.A.V. and B.M.V.'s best interest.

## CONCLUSION

The trial court's judgment terminating D.V.'s parental rights is affirmed.

Karen Angelini, Justice