**Opinion filed September 17, 2020**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00094-CV

_____

## IN THE INTEREST OF A.L., A CHILD

**On Appeal from the 326th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 9569-CX**

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in which the trial court terminated the parental rights of the mother and father of A.L. The mother filed an appeal. On appeal, she presents four issues: one in which she complains of the lack of a request for an extension under the terms of the mediated settlement agreement and three in which she challenges the legal and factual sufficiency of the evidence. We affirm the trial court's order of termination.

### Termination Findings and Standards

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001(b) (West Supp. 2019). To terminate

parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(b)(1)(A)–(U) and that termination is in the best interest of the child. *Id.*

In this case, the trial court found that Appellant had committed two of the acts listed in Section 161.001(b)(1)—those found in subsections (E) and (O). Specifically, the trial court found that Appellant had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being and that Appellant had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parents for abuse or neglect. The trial court also found, pursuant to Section 161.001(b)(2), that termination of Appellant's parental rights would be in the best interest of the child.

To determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the

child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent–child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

*Background Facts*

The record reflects that the Department became involved with Appellant shortly after A.L.'s birth in 2019. The initial intake related to drug use by the parents. The Department began family-based safety services, and the parents partially engaged in those services for a few months. Removal was necessitated by Appellant's continued use of methamphetamine. While A.L. was in Appellant's care, Appellant submitted to a urine analysis in which she tested positive for methamphetamine at a level greater than 10,000 ng/mL and amphetamine at a level of 640 ng/mL. Upon removal, a hair follicle test was conducted on three-month-old A.L.; she tested positive for methamphetamine at a level of 10,370 pg/mg, amphetamine at 517 pg/mg, and marihuana at 0.2 pg/mg.

After the Department removed A.L., Appellant continued to test positive for drugs. As the trial date approached, Appellant avoided at least three drug tests: she bleached her hair prior to two hair follicle tests (even though she had been ordered not to bleach her hair), and she trimmed her fingernails and toenails so that they were too short for a court-ordered nail bed test.

3

The record reflects that the Department and the parents participated in the creation of a family service plan after A.L. was removed. The trial court made that family service plan an order of the trial court. Appellant failed to comply with most of the plan's provisions. In addition to her continued drug use, Appellant failed to maintain stable housing; she was evicted twice while the case was pending in the trial court. Appellant also failed to obtain and maintain steady employment. Additionally, her visits with A.L. did not go well; Appellant often fell asleep during the visits, which were supervised. Appellant informed her conservatorship caseworker on many occasions that she was scared of A.L.'s father due to incidents of domestic violence.

At the time of removal, the Department sought to place A.L. with family or friends of the family, but the family members and friends suggested by the parents were either not willing or not suitable. A.L. was therefore placed in foster care. She remained in the same foster home throughout the case below. The foster home was an appropriate home, and the foster parents were able to meet all of A.L.'s needs. A.L. loved her foster parents and had bonded with her foster family. The conservatorship caseworker testified that A.L. seemed happy, was doing very well, was well-adjusted, and was thriving in her foster home. The foster parents intend to adopt A.L. if she becomes available for adoption. The conservatorship caseworker believed that termination of Appellant's rights would be in the best interest of A.L. The Department's goal for A.L. was termination of the parents' rights and adoption by the foster parents.

*Analysis*

*Sufficiency of the Evidence*

In her second and third issues, Appellant challenges the legal and factual sufficiency of the evidence to prove grounds (E) and (O). We need only address her challenge to the trial court's finding under Section 161.001(b)(1)(E). *See In re N.G.*,

577 S.W.3d 230, 234–35 (Tex. 2019) (addressing due process and due course of law with respect to appellate review of grounds (D) and (E) and holding that an appellate court must provide a detailed analysis if affirming the termination on either of these grounds).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 34 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Drug use may constitute evidence of endangerment. *Id.* A parent's drug addiction and its effect on the parent's life and ability to parent a child may establish an endangering course of conduct. *In re J.T.G.*, 121 S.W.3d 117, 125–26 (Tex. App.—Fort Worth 2003, no pet.) (citing *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ)). Domestic violence may also constitute evidence of endangerment. *C.J.O.*, 325 S.W.3d at 265.

Based upon evidence of Appellant's use of methamphetamine while responsible for the care of A.L.; A.L. testing positive for methamphetamine at a level of 10,370 pg/mg, amphetamine at 517 pg/mg, and marihuana at 0.2 pg/mg; Appellant's continued use of drugs after removal; and the existence of domestic violence between the parents, the trial court could have found by clear and convincing evidence that Appellant engaged in a course of conduct that endangered A.L. We hold that the evidence is legally and factually sufficient to uphold the trial

5

court's finding as to Appellant under subsection (E). Accordingly, we overrule Appellant's second issue. Because only one statutory ground is necessary to support termination and because we have upheld the trial court's finding as to subsection (E), we need not reach Appellant's third issue. *See* FAM. § 161.001(b)(1); *N.G.*, 577 S.W.3d at 234–35.

In her fourth issue, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights was in the best interest of A.L. Appellant used methamphetamine while A.L., who was an infant, was in Appellant's care. Both Appellant and A.L. tested positive for methamphetamine and amphetamine. A.L. also had marihuana in her system at the time of removal. Appellant and A.L.'s father, who also struggled with methamphetamine use, engaged in domestic violence. Furthermore, Appellant had no stable housing or employment.

A.L. had been placed in an adoptive foster home where all of her needs were being met. She had been in the same foster home since she was removed from her parents, and she had bonded with her foster family. The conservatorship caseworker testified that it would be in A.L.'s best interest to terminate Appellant's parental rights.

Based upon the evidence presented in this case, we defer to the trial court's finding as to the child's best interest. *See C.H.*, 89 S.W.3d at 27. We hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of Appellant's parental rights would be in A.L.'s best interest. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the child's desires (A.L. was too young to express any desire), the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of those involved, the plans for the child by the Department,

6

Appellant's use of methamphetamine, the existence of domestic violence between the parents, the instability of Appellant's housing situation, and the stability of the placement, we hold that the evidence is legally and factually sufficient to support the finding that termination of Appellant's parental rights is in the best interest of the child. *See id.* We cannot hold that the finding as to best interest is not supported by clear and convincing evidence. We overrule Appellant's fourth issue.

*Request for Extension*

In her first issue, Appellant asserts that error exists because the parties failed to request an extension of the dismissal date as mandated by the parties' mediated settlement agreement. *See* FAM. § 263.401. We note that a trial court may grant an extension of up to 180 days in this type of case if the trial court finds that extraordinary circumstances necessitate that the child remain in the temporary managing conservatorship of the Department and that continuing the appointment of the Department as temporary managing conservator is in the child's best interest. *See id.* § 263.401(b).

The record reflects that the parties entered into a mediated settlement agreement (MSA) approximately three weeks prior to the pretrial hearing and five weeks prior to the final hearing on termination. In the MSA, the parties agreed in part as follows:

> If [Appellant] complies with the requirements below, all parties agree to join in a request for an extension of this case pursuant to Texas Family Code § 263.401:
>
> - [Appellant] will continue to comply and complete all parts of her service plan.
>
> - [Appellant] will complete a residential drug abuse treatment program and provide proof of completion to the Department.
>
> . . . .

7

If [Appellant] has applied and is on a waiting list for a residential treatment program at the time of the pretrial setting in this cause, due to no intentional delay on her part, then all parties agree to join in a request for an extension of this case pursuant to Texas Family Code § 263.401.

Although Appellant asserted in her motion for new trial (which was neither verified nor supported by an affidavit) and on appeal that she was on a waiting list for a residential treatment program on the date of the pretrial setting, the record contains no evidence to support Appellant's assertion. Nor does the record reflect that Appellant "continue[d] to comply and complete all parts of her service plan" as required by the MSA. We note that the appellate record does not contain a reporter's record from the pretrial hearing.

The reporter's record from the final hearing reflects that Appellant did not appear for trial because she was supposed to enter an inpatient treatment facility that morning. Appellant's trial counsel announced "not ready" and requested a continuance because Appellant "was on her way to rehab." The trial court denied trial counsel's request. The conservatorship caseworker testified that Appellant was supposed to enter the inpatient treatment facility at 8:00 a.m. that morning but that, at 9:17 a.m., Appellant informed the caseworker that she had overslept and that she was on her way at that moment. Because the record does not show that Appellant had complied with the terms of the MSA, we cannot hold that her trial counsel was in any way deficient for failing to request an extension based on the MSA or that the trial court erred in not granting an extension pursuant to Section 263.401. We overrule Appellant's first issue.

8

*This Court's Ruling*

We affirm the order of the trial court.


                                    JOHN M. BAILEY
                                    CHIEF JUSTICE


September 17, 2020

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.