**Dissenting Opinion Filed August 14, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-23-00110-CV**

_____

**IN THE INTEREST OF N.J., A CHILD**

**On Appeal from the 305th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JC-21-00655-X**

## DISSENTING OPINION

Before Justices Reichek, Nowell, and Garcia
Dissenting Opinion by Justice Garcia

I respectfully dissent from the majority's holding that the evidence is legally

insufficient to support the trial judge's endangerment finding under Family Code

§ 161.001(b)(1)(E). I would overrule both of Father's issues and affirm the judgment

of termination.

**A.     Endangerment**

**1.     Applicable Law**

The trial judge found by clear and convincing evidence that Father's acts and

omissions endangered N.J., meaning that he jeopardized her well-being or exposed

her to loss or injury. *See In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021). Our role is

limited to determining whether that finding was reasonable. *See id*. We must defer to the trial judge's credibility determinations, assume that she resolved all disputed facts in favor of her finding if a reasonable factfinder could do so, and disregard all evidence contrary to her finding that a reasonable factfinder could have disbelieved or found incredible. *See id*.

An endangerment finding must be based on a voluntary, deliberate, and conscious course of conduct by the parent; a single act or omission will not suffice. *In re R.B.*, No. 05-21-00043-CV, 2021 WL 2943927, at *8 (Tex. App.—Dallas July 9, 2021, no pet.) (mem. op.).

Importantly for this case, endangerment can be proved by acts and omissions occurring (1) inside or outside the child's presence, (2) before or after the child's birth, and (3) before or after the child's removal. *See id*. at *8–9. "A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being." *Id*. at *9.

Thus, a parent's failure to complete court-ordered services can be evidence of child endangerment, both because it can lead to termination of the parent–child relationship and because it can indicate that past endangering conduct remains unaddressed and is likely to continue in the future. *See In re T.J.*, No. 05-22-00954-CV, 2023 WL 1988838, at *9 (Tex. App.—Dallas Feb. 14, 2023, no pet.) (mem. op.). Similarly, a parent's criminal conduct may support an endangerment finding because it exposes the child to the possibility that the parent may be imprisoned and

–2–

the child may be left alone. *See Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

### 2. Application of the Law to the Facts

Under our deferential standard of review, I would conclude that the trial judge could reasonably find the following facts by clear and convincing evidence:

- N.J.'s mother voluntarily surrendered N.J. for adoption and never attempted to regain custody.

- During this case, N.J. was placed with Father's mother, T.M., but after about a month she returned N.J. to the Department's custody.

- When a caseworker went to pick N.J. up from T.M.'s care, Father prevented T.M. from signing an affidavit, created a threatening atmosphere, and prompted the caseworker to press her "panic button" and summon the police. During this episode, the caseworker lost track of N.J., and Father told the caseworker that she could leave because N.J. "was gone anyway." However, before the caseworker left, she saw N.J. again when Father "c[a]me back in with her."

- During this case, Father became angry during a virtual family group conference about N.J.'s placement and said that he did not want N.J. to be placed with anyone in his family. Father's sister, Q.P., had been considered as a possible placement for N.J., but after the conference Q.P. removed herself from consideration.

- Father was repeatedly arrested during the years 2009 to 2022. Four of the charges involved assault. He was arrested for assaulting his father during the pendency of this case, he was in jail during the week of trial, and he was out of jail on bond during the trial.

- Although no direct evidence was presented that Father was convicted of any of these charges, he testified that half of the charges raised by the State were dropped. The trial judge could reasonably infer from this testimony that the other half were not

dropped, i.e., they were still pending or ended in convictions or deferred-adjudication orders.

- Father did not complete court-ordered anger-management services or individual-counseling services. He was terminated from court-ordered services for noncompliance.

Considering the evidence as a whole, I would conclude that the trial judge's endangerment finding was reasonable. The evidence supported a finding that T.M., Q.P., and N.J.'s mother were not willing to take custody of her. The trial judge could reasonably conclude that Father's long history of arrests, including a recent arrest for assaulting his father, and his incarceration during the week of trial endangered N.J.'s physical and emotional well-being by exposing N.J. to the possibility that Father would be imprisoned and unable to care for N.J. Likewise, his failure to complete court-ordered services endangered N.J. by threatening Father's ability to be reunited with N.J. and thus continuing a situation of instability and uncertainty for N.J.

Each case is unique, but we affirmed a termination order on somewhat similar facts in *In re L.E.H.*, No. 05-18-00903-CV, 2018 WL 6839565 (Tex. App.—Dallas Dec. 31, 2018, no pet.) (mem. op.). In that case, two children were removed from their mother's custody after a referral for negligent supervision and drug use by their mother; the children's father was in jail at the time because his relationship with the mother had become violent. *Id*. at *1, *2. After his release during the pendency of the case, the father visited the children only once, and he was jailed again during the case for drug possession. *Id*. at *1. Although the evidence did not make the father's

incarceration history entirely clear, we concluded that the evidence that the father endangered the children was sufficient because the father's "continued criminality contributed to the neglectful and unstable environment in which the boys had lived," in addition to the evidence regarding the father's drug possession and violence towards the mother. *Id*. at *5. In the instant case, Father's criminal history is not entirely clear either, but his long history of arrests, including arrests for assault offenses, is probative evidence that he endangered N.J.'s well-being by making it likely that he would be unable to care for her. Additionally, Father endangered N.J.'s well-being by failing to complete his court-ordered services and by his angry outbursts during events pertinent to this case.

Moreover, the majority's attempt to distinguish our *L.E.H.* opinion is unpersuasive. The majority emphasizes that the father in *L.E.H.* definitely served time in prison, while the evidence in this case did not establish that Father served any "terms of incarceration." The majority also considers Father's assaultive behavior in this case distinguishable from that in *L.E.H.* because, while the trial court could reasonably infer violence by Father against a family member, it did not involve the child's mother like the violence in *L.E.H.* did. These distinctions ignore the main point of *L.E.H.*: criminal conduct and violations of court orders are endangering to a child even if the child is not immediately threatened by the conduct because that conduct can cause instability and uncertainty in the child's life, can lead to termination of the parent–child relationship, and can indicate that past endangering

conduct remains unaddressed and is likely to continue in the future. *See In re T.J.*, 2023 WL 1988838, at \*9. But the majority would require a different result because the parents in these cases had different criminal histories and did not comply with the court-ordered plans in different ways.

Giving due deference to the trial judge, and following our holding in *L.E.H.*, I would conclude that the evidence was legally and factually sufficient to support the endangerment finding.

## B.     Best Interest

I would also conclude that the evidence was legally and factually sufficient to support the trial judge's finding that terminating Father's parental rights to N.J. was in N.J.'s best interest.

Some factors relevant to the best-interest determination include (1) the child's age and vulnerabilities; (2) whether there is a history of abusive or assaultive conduct by the child's family; (3) whether the child's family is willing and able to seek, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (4) whether the child's family demonstrates adequate parenting skills; (5) the child's physical and emotional needs; (6) any emotional and physical dangers to the child; and (7) the parties' plans for the child and the stability of the home or proposed placement. *See* TEX. FAM. CODE ANN. § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The evidence in this case was legally and factually sufficient to support the finding that N.J.'s best interest would be served by terminating Father's parental rights. N.J. was only one year old at the time of trial, and thus she was very vulnerable and in need of protection. Father's arrest history supports a conclusion that he has a history of committing assaultive conduct. Some evidence supports the premise that Father was not willing to complete court-ordered services or to cooperate with Department supervision during this case. The CPS supervisor on the case testified that Father would "be aggressive and yell" whenever something was not going his way. There is also evidence that N.J. has special needs in the form of developmental delays for speech.

Additionally, a Department caseworker testified that N.J.'s foster parents were good at making sure that N.J.'s needs were met and her appointments were kept. She also testified that the Department believed that the foster parents could provide a safe environment for N.J. in the future. And she testified that N.J. was in a "Foster to Adopt" foster home. Father, on the other hand, testified that his mother would take care of N.J. while Father's sister was working, and at other times his sister would help be a primary caregiver for N.J., and he would help out any way he could. But the trial judge was in the best position to judge Father's credibility, and she was entitled to discount his testimony, particularly in light of other evidence that tended to show that Father's mother and sister were not eager to raise N.J.

In sum, the evidence is sufficient to support the trial judge's best-interest finding.

* * *

I would overrule both of Father's issues and affirm the trial court's judgment. Because the majority does not, I respectfully dissent.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

230110DF.P05