

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-24-00084-CV

_____

## IN THE INTEREST OF A.A., JR. AND K.A., CHILDREN

_____

**From the County Court at Law
Hill County, Texas
Trial Court No. CV328-22CCL**

---

## MEMORANDUM OPINION

---

The mother of A.A., Jr. and K.A. appeals a judgment that terminated her parental rights to her children.[1]  The mother complains that the evidence was legally insufficient for the trial court to have found that she committed the predicate ground set forth in Section 161.001(b)(1)(D) (endangering conditions) or that termination was in the best interest of the children.  *See* TEX. FAM. CODE §161.001(b)(1)(D), 161.001(b)(2).  Because we find no reversible error, we affirm the judgment of the trial court.

### STANDARD OF REVIEW

The standard of review for legal sufficiency of the evidence in cases involving the

---

[1] The father's rights were also terminated, but he did not appeal the trial court's judgment.

termination of parental rights is well established and will not be repeated here. *See In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002). The trial court, as factfinder, is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). Additionally, if the evidence is sufficient as to one predicate act, it is not necessary to address the other predicate acts because sufficient evidence as to only one predicate act in addition to the best interest finding is necessary to affirm a termination judgment. *In re N.G.*, 577 S.W.3d 230, 232-33 (Tex. 2019).

## PREDICATE ACTS

In her first issue, the mother complains that the evidence was legally insufficient for the trial court to have found that she committed the predicate ground in Section 161.001(b)(1)(D). The termination judgment reflects that the mother's parental rights were terminated based on three predicate grounds: endangering environment (Subsection (D)); endangering conduct (Subsection (E)); and failure to comply with a court-ordered service plan (Subsection (O)). *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E), & (O). The mother acknowledges in her brief that the evidence was legally sufficient as to endangering conduct and the failure to complete her service plan. By failing to challenge all of the trial court's predicate ground findings, the mother has waived any complaint about the sufficiency of the evidence to support the judgment as to predicate grounds. *See In re Z.M.M.*, 577 S.W.3d 541, 542 (Tex. 2019) (per curiam) (stating that "only one ground is required to terminate parental rights"). Because the mother has not challenged the sufficiency of the evidence as to Section 161.001(b)(1)(E) or (O), we find

that there was sufficient evidence as to one ground to support the termination of her parental rights.

Generally, we are required to address the sufficiency of the evidence as to Subsection (D) or (E) due to potential collateral consequences in the future. *See In re N.G.*, 577 S.W.3d at 236–37 ("allowing a challenged section 161.001(b)(1)(D) or (E) finding to stand unreviewed...creates the risk that a parent will be automatically denied the right to parent other children even if the evidence supporting the section 161.001(b)(1)(D) or (E) finding were insufficient"). However, we are not required to address that complaint because the unchallenged ground pursuant to Subsection (E) satisfies this requirement. *See id.* We overrule issue one.

## BEST INTEREST

In her second issue, the mother complains that the evidence was legally insufficient for the trial court to have found that termination was in the best interest of the children. In determining the best interest of a child, a number of factors have been consistently considered which were set out in the Texas Supreme Court's opinion, *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). This list is not exhaustive, but simply identifies factors that have been or could be pertinent in the best interest determination. *Id.* There is no requirement that all of these factors must be proved as a condition precedent to parental termination, and the absence of evidence about some factors does not preclude a factfinder from reasonably forming a strong conviction that termination is in the children's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The *Holley*

factors focus on the best interest of the children, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). And while no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the children's best interest. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet). Evidence relating to the predicate grounds under section 161.001(b)(1) also may be relevant to determining the best interest of the children. *See C.H.*, 89 S.W.3d at 27-28.

The children were removed from the mother and father due to an incident involving domestic violence and alcohol in the presence of the children, who were almost 4 years old and 20 months old. The mother took a hair test during the investigation which showed a high amount of alcohol. The caseworker testified that she was told that the high number indicated excessive, chronic alcohol abuse. The mother and father had an on-again, off-again relationship. The mother finally split from the father approximately six months into the proceedings after an incident involving the father and the mother's boyfriend.

The mother participated in services and the children were returned to the mother on a monitored return. The mother was residing with her father at that time, who was a registered sex offender. The mother's father had been convicted of sexually assaulting the mother's sister when she was a young teenager, although the mother did not believe that her father was guilty. The mother informed the caseworker that she had concerns about the father developing dementia. The department informed the mother that her

father was not allowed to be a caregiver of the children by himself.

Ten days after the children were returned, the mother was arrested for driving while intoxicated, with an alcohol concentration over .15. The children were in the care of the mother's father in violation of the department's stipulation. The children were removed from the mother again. The children told a caseworker that the mother and her father would drink together every day.

The mother was required to participate in drug and alcohol testing throughout the case, but many of the tests were either missed or diluted samples were given. In the time after the second removal, the mother completed an evaluation that recommended outpatient treatment. The mother did not take her required drug and alcohol tests. When she did finally complete a test almost 3 months after the second removal, the mother tested positive for alcohol. A couple of weeks after that test, the mother went to an inpatient facility for 30 days, which she successfully completed. The discharge summary from the facility recommended intensive outpatient services and for her to attend Alcoholics Anonymous. The mother complied with attending AA but did not participate in any intensive outpatient services. The mother denied being told that she was required to do so but acknowledged that it was included in the written discharge summary admitted into evidence.

In the two months after the completion of the inpatient treatment, the mother failed to submit to regular testing seven times, submitted two diluted samples, and tested negative twice for alcohol. She was placed on 12 months of community supervision for

the DWI less than two months before the termination trial and was required to blow into a home interlock device three times a day as a condition of her community supervision. The mother had not violated her community supervision as of the time of the trial, but had only reported to the community supervision office once and had not yet met her probation officer.

Early in the case, the children were placed with fictive kin and had remained in that home except for the short time the children were returned to the mother. The caregivers wanted to adopt the children if the parents' rights were terminated. The children were very bonded to the placement, were taken care of well and were thriving in the placement.

The mother had over 20 cases with the department since 2008 and had participated in services in at least three of them. She had seven children, one of whom was an adult. All seven of them had resided outside of her home, and the six minors were placed or resided outside her home at the time of the final trial.

The caseworker testified that the mother had never acknowledged that she had a serious problem with alcohol. At trial, the mother did not know her diagnosis but stated that "[p]retty much I'd drink socially and I drink excessively when I do drink." This was demonstrated by her "bad mistake" of leaving her just-returned young children with her sex-offender father to go drinking at a birthday party which led to her arrest for driving while intoxicated with a very high concentration of alcohol in her blood. After the second removal of her children, rather than demonstrating to the department that she was

serious about doing whatever was necessary to have her children returned and knowing that her parental rights were in serious jeopardy, she failed to submit to testing for over two months and tested positive for alcohol when she did finally take a test. Even after she completed the inpatient treatment, she still failed to comply with testing when requested by the department. It was reasonable for the trial court to find that her failure to comply with testing demonstrated a lack of concern as to the return of the children to her.

The mother claimed at the trial that she was no longer around people who drink since being placed on community supervision shortly before the trial. Also, the mother contended that in the future, she was not going to be around people who drink. The mother stated that this included not allowing her father, who still lived with her at the time of the trial, to drink around her. However, we cannot say that this contrary evidence of recent improvement is "so significant" that the factfinder could not have formed a firm belief or conviction that termination of the mother's parental rights was in the children's best interest. *See In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

The trial court, as factfinder, observed the mother's credibility, and heard her excuses and explanations for her behavior and actions. Based on the record before us, we find that the evidence was legally sufficient to support the trial court's finding that termination was in the best interest of the children. We overrule issue two.

**CONCLUSION**

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
Affirmed
Opinion delivered and filed August 8, 2024
[CV06]

